## Hayes's Estate.

*Evidence—Witness—Party dead—Husband and wife.*

In the distribution of a deceased wife's estate, where the controversy is between the husband electing not to take under her will, and others claiming under the will, the husband is a competent witness in his own behalf, and he may show by his own testimony the fact of his wife's adultery, where his testimony does not involve the disclosure of confidential communications made by her to him.

*Husband and wife—Desertion—Decedent's estates—Act of May 4, 1855, P. L. 430.*

The reasonable and lawful cause which will justify a husband in separating from his wife and refusing to contribute to her support will prevent the Act of May 4, 1855, P. L. 430, from operating to debar him, after her decease, from claiming his courtesy or his rights under the intestate laws. It must be such cause as would be sufficient to entitle him to a decree of divorce against her and the burden of proof is upon him.

*Practice, O. C.—Auditing judge's finding of fact—Appeal.*

An auditing judge's findings of fact based upon sufficient evidence and approved by the court below will not be disturbed by the appellate court, in the absence of manifest error.

Argued Oct. 9, 1903. Appeal, No. 42, by Lydia Hanbest et al. from decree of O. C. Philadelphia Co., Jan. T., 1902, No. 501, dismissing exceptions to adjudication in estate of Catharine Hayes, deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to adjudication.

FERGUSON, J., filed the following adjudication:

The testatrix by her will recited as follows:

" Whereas my husband, John Hayes, having wilfully and maliciously deserted me for the past twelve years; and failed and refused to contribute to my support, I order and direct that the said John Hayes shall not share in the distribution of my estate, nor receive or enjoy any part or portion thereof."

John Hayes, Jr., the husband of the testatrix, filed his election with the register of wills to take against this will the share of this estate to which he would be entitled under the intestate laws. It was claimed that under the provisions of the will above recited he took nothing, and that he had, under the act of May 4, 1855, forfeited all right to participate in the distribution of this estate, because he had for more than one year wilfully neglected or refused to provide for his wife, and for that period had wilfully and maliciously deserted her.

The question to be decided turns upon a question of fact, because the law seems to be well settled that if the husband was justified in leaving his wife, this act of assembly cannot be invoked to prevent his taking the share of the estate to which he would be entitled as tenant by the courtesy, or under the intestate laws. The burden is upon him to show that he had reasonable cause for such desertion, and this proof must be something that would, under the law, have been sufficient to entitle him to a decree of divorce from her : Hahn v. Bealor, 132 Pa. 242.

The testimony in this case was very conflicting, and there is no doubt that perjury has been committed upon one side or the other, as it is impossible to reconcile the evidence upon any other theory. There is no doubt that Mr. and Mrs. Hayes separated in 1891, and since that time he has not contributed in any way for her maintenance or support. This is evident in the testimony of the testatrix's mother and her two sisters, and is an admitted fact in the case.

As to the cause of the separation, these witnesses alleged that Mrs. Hayes never told them, and they never knew anything about it, further than there had been trouble, and that Hayes shot a Mr. McFarland, who boarded with him, and that Mrs. Hayes then left him and went to her mother's house.

The husband was called as a witness, and was objected to

on the ground that as a claimant against this estate he was incompetent. The auditing judge does not so regard him. While he is a claimant in a certain sense, he · is not claiming as a creditor. This is a controversy between two sets of claimants—one under the will and one under the intestate laws. Those claiming under the will were examined. Why should not the one that claims against the will under the law be examined also? The acts of assembly with reference to the competency of witnesses expressly except issues devisavit vel non between parties claiming such right by devolution upon the death of such owner. In Hunt's Appeal, 100 Pa. 590, which was a controversy between the widow claiming her exemption and the devisee under the will, the Supreme Court said : " Were widow and children claiming as creditors, they would all be alike incompetent to testify to matters occurring in the intestate's lifetime . . . . claiming as they do by devolution on the death of the former owner, they are all within the exception of the proviso." See also Groves's Estate, 5 Pa. C. C. Rep. 498.

The husband was admitted as a witness, and the case as presented by him is that he and the testator were married February 6, 1886, and keeping house on Dorrance street in this city ; that there lived with them as a boarder a certain friend of his named McFarland, and a servant girl named Laura Priest ; that the husband was employed on the railroad ; that on Saturday before Easter, 1891, he told his wife that he had to go out on a train, the fireman of which had been taken sick, and that he would not be back all night. It so happened that when this train reached Wilmington, Delaware, he was ordered on another train which was to be taken back to Philadelphia, and consequently arrived home unexpectedly after midnight. Upon going to his room he found that the bed was undisturbed and his wife not there. He went to the servant's room to inquire about her, and found her so sound asleep that he could not get any satisfaction. The door of the room occupied by McFarland being ajar, he looked in, and there found his wife and McFarland in bed together sound asleep. There happened to be a double barrelled shot gun standing in a corner of the room, and he seized it and shot at McFarland, and wounded him so severely in the arm that it afterwards had to

be amputated. His wife ran from the house in her night clothes to an oyster saloon in the neighborhood, where she borrowed a wrapper and slippers, and went to her mother's house, where she arrived about two o'clock in the morning. The husband surrendered himself to the police. He was subsequently tried in the quarter sessions court, and pleaded guilty to the assault upon McFarland. The judge who tried the case, after hearing the statements of McFarland and the defendant, suspended sentence, and discharged the defendant from custody.

The husband testified that at this trial the judge asked McFarland the question whether he was in Mrs. Hayes's room, or whether she was in his at the time of the shooting, and that he said, "She was in mine." McFarland, who was called as a witness, denied making this admission, but John S. Hemphill, another witness who was present at the trial, said that the only question that he heard asked of McFarland was, "Was you in Mrs. Hayes's bed when you were shot, or was Mrs. Hayes in your bed?" and that McFarland made the reply, "She was in my bed." Laura Jamison, formerly Priest, who was also present at this trial, testified that she did not hear McFarland say this. John Hayes, senior, the father of the husband, testified that after his son was discharged from custody, he went with him to the Dorrance street house, and that he there met Mrs. Hayes. "I said to her, 'Kate, this is bad business; are you guilty of this crime?' and she said, 'Yes, I am, but this is my first offense;' exactly the words she made use of. She said if I would get Jack to overlook it, and I said, 'No, Jack can do as he pleases, but I will not overlook it.'"

With regard to what took place the night of the shooting of McFarland, Laura Jamison, the servant girl, who was in the house, testified that she and Mrs. Hayes were in bed together asleep, and that McFarland was also in bed in his room asleep, and the first thing she heard was that McFarland was shot, and the bed clothes on fire and the room was all in a blaze. "I do not know where Mrs. Hayes got to; she had disappeared. He followed her downstairs with a gun in his hand." Thus she, by her testimony, corroborates what was testified to by Hayes about his wife running out of the house without any clothing. Why should she have done this if she was innocent? Flight

is always evidence of guilt.   But how much stronger a case is presented when a women runs into the public streets undressed.

Now, what was the motive for Hayes shooting McFarland? A man never does an act of this kind without a motive, unless he is either drunk or crazy.   There is no evidence of either in this case.   McFarland was Hayes's friend, he had taken him into his house, and they had lived together several years.   Why should he go to his room when he was sound asleep, and shoot him?   The auditing judge has no hesitation in saying from the testimony and from all the facts and circumstances in this case that he does not believe the testimony of Laura Jamison.   Mr. Hayes commenced proceedings for a divorce from his wife on the ground of adultery, but because of the expense and other reasons given by him he did not prosecute those proceedings to a decree.   The auditing judge is of the opinion that under the evidence submitted in this case he would have been entitled to such a decree if the case had been prosecuted.   Under those circumstances he find that Mr. Hayes was justified in separating himself from his wife, and that the act of assembly of May 4, 1855, has no application to a case of this kind.

*Error assigned* was in dismissing exceptions to adjudication.

*Henry J. Scott,* for appellants.

*John M. Strong,* for appellee.

PER CURIAM, November 16, 1903:

The objection, that in the distribution of a deceased wife's estate, the controversy being between her husband electing not to take under her will and others claiming under the will, the husband is not a competent witness in his own behalf for any purpose, is clearly shown in the opinion filed by the learned auditing judge to be not well founded.   Is he a competent witness to the fact of her adultery, where his testimony does not involve the disclosure of confidential communications made by her to him?   This question is not particularly discussed in the opinion filed by the learned judge, but his ruling upon the audit, and the disposition made by the court of the exceptions to his adjudication, necessarily imply an affirmative

answer to that question, and in that conclusion we concur. The reason for the rule of the common law which forbade husband or wife to give testimony tending to criminate the other, although not a party to the suit, was the disturbance of the marital relation which would result from the admission of such testimony. Upon the termination of that relation by the death of one of the parties the reason of the rule ceases, except as to confidential communications, and the rule itself as applied to such a case, has not been established or preserved by the act of 1887. The precise question did not arise in Dumbach v. Bishop, 183 Pa. 602, but the foregoing conclusion is in harmony with the reasoning of the court in that case.

The reasonable and lawful cause which will justify a husband in separating from his wife and refusing to contribute to her support will prevent the Act of May 4, 1855, P. L. 430, from operating to debar him, after her decease, from claiming his curtesy or his rights under the intestate laws. It must be such cause as would have been sufficient to entitle him to a decree of divorce against her and the burden of proof is upon him. As to the legal sufficiency of the cause here set up by the appellee as a justification for his admitted separation from and refusal to support his wife, there is, of course, no question. Nor can there be any question that there was ample evidence, if believed, to warrant a finding that the cause existed in fact. The case turned almost wholly upon the credibility of the witnesses and the weight of the testimony. After a careful scrutiny and consideration of the testimony, and of the very earnest argument of the appellant's counsel, we see no reason to doubt the correctness of the conclusions reached by the learned auditing judge, and approved by the court, upon these questions. Perhaps the learned judge attached more significance to the flight of the wife than the fact was entitled to under the circumstances, yet it is apparent from his opinion as a whole that he would have reached the same conclusion, if that fact had been absent. His finding that the appellee pleaded guilty, when as matter of fact he was convicted by the jury, is an immaterial error that did not affect the result. As to these and the other minor questions raised by the assignments of error, we deem it enough to say that we find no error which would justify a reversal of the decree.

The case is very plainly within the general rule that an auditing judge's findings of fact, approved by the court below, there being sufficient evidence to sustain them, will not be disturbed by the appellate court, in the absence of manifest error, especially where the findings depend as largely upon the credibility of the witnesses as they do here.

Decree affirmed and appeal dismissed at the appellant's costs.