# Stewart *v.* F. A. North Company, Appellant.

*Bailment—Lease of piano—Improper retaking—Trespass vi et armis—Witness—Husband and wife.*

In an action of trespass against a piano company, the plaintiff is entitled to damages where it appears that the defendant had leased to him a piano under a lease which gave it the right to retake the piano "by forcible possession, if necessary," in case of default, and that the defendant, in the temporary absence of the plaintiff entered the house by breaking a window, opened a locked door at the rear of the house, and after removing the piano left the door open, so that thieves subsequently entered the house and took therefrom personal property belonging to the plaintiff.

In such a case the wife of the plaintiff who had been divorced from her husband between the date of the trespass and the day of the trial, may testify on behalf of the defendant that the personal property alleged to have been taken, had been removed from the house long prior to the date of the trespass.

The disqualification which remains after the dissolution of the marital relation is restricted to communications of a confidential nature and does not embrace ordinary business transactions.

Argued Oct. 9, 1916.　Appeal, No. 36, Oct. T., 1916, by defendant, from judgment of C. P. No. 2, Philadel-

phia Co., Sept. T., 1913, No. 3927, on verdict for plaintiff
in case of James F. Stewart v. F. A. North Company.
Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEP-
HART, TREXLER and WILLIAMS, JJ.    Reversed.

Trespass to recover damages for the loss of personal
property alleged to have resulted from an unlawful entry
into plaintiff's premises.    Before SULZBERGER, P. J.

At the trial Theresa C. Stewart, the divorced wife of
the defendant, was called as a witness for the defendant,
and was asked this question:

"Q.—State whether or not there was in the cellar of
the house at the southeast corner of 55th and Walnut
streets, in December, 1909, and the early part of January,
1910, the flexible copper tubing, box of lubricators,
valves, machinery and other things your former husband
has testified here to-day were in that house at that time.

"(Objected to.)

"The Court.—The knowledge acquired by the witness
while she was the wife of the plaintiff, and acquired by
reason of her position as the head of his household, can-
not be testified to by her after divorce.

"(Exception noted for defendant.)"    (11.)

The court charged in part as follows:

The plaintiff sued the defendant for having unlawfully
entered his house and taken away a piano, which it is ad-
mitted the defendant had a right to take away.    The
loss, therefore, of the piano does not constitute a damage
to the plaintiff; but he says the real damage is the viola-
tion of his right as a householder, by entering his house,
as the old common law would say, vi et armis, with force
of arms and without right.    That in itself is claimed to
be a trespass for which damages may be allowed.    But
he does not stop there.    He says that in consequence of
that trespass the house was left unguarded, so that any
thief could enter it; that a thief did enter it, went down
in the cellar and stole property to the value of $700 or
$800.

On that point the evidence rests entirely upon the testimony of the plaintiff himself, which testimony is contradicted in a very important respect.    He says that on that occasion the gas meter was robbed.    All the robberies he talked of occurred at one time, and that was when the gas meter was robbed.    The evidence is that the gas meter was probably robbed, but the question is, when? He has testified that it was all done at one time.    When the gas meter was robbed, the tubing and all the rest of the stuff was taken, and he thinks that was done between New Year's Day of 1910 and the day he came back from Riverside, ten or twelve days afterward.    It turns out from records, as testified to by Mr. Bross, who, of course, has no particular interest in this case and is a mere clerk in the U. G. I., that in reality the gas was turned off in November, 1909, two months before this event, and the mischief that he complains of as having been done on the 10th of January was done on the 9th of November, two months before.    If that were so, he is simply mistaken in his dates, and if he is mistaken in his dates, of course he did not suffer this damage on the day that he complains of.    That is for you to decide.    If in the face of this testimony you believe that that stuff was still there in January, 1910, then you must examine his testimony as to value.

If you find that this stuff was not there any more, you have to dismiss that, and there is only one thing left, and that is the forcible entry into this house, which is uncontradicted.    The testimony on both sides establishes it, and I charge you that that was an unwarranted violation of the rights of the plaintiff by the defendant, and that the plaintiff is entitled to recover damages therefor, and that it need not be confined to merely nominal damages, because it is an act of arrogance and oppression, and not a mere harmless act.    Where a man arrogantly and oppressively enters another man's house by force and violence, he may be held to pay such damages as you consider reasonable satisfaction for such a violation of a

man's individual rights.    That, under the evidence, the plaintiff is entitled to.    Whether he is entitled to any more is for you.

Verdict for plaintiff for $1,000 on which judgment was entered for $500 all in excess of that sum having been remitted.

*Errors assigned* were rulings on evidence and various instructions.

*S. Spencer Chapman* and *Francis Chapman,* for appellant.—Mrs. Stewart was competent: Adams v. Bleakley, 117 Pa. 283.

The court was wrong in instructing the jury that the defendant was a trespasser, in spite of a contract giving a right of entry on plaintiff's premises: Lowry v. Singer Sewing Machine Co., 62 Pa. Superior Ct. 364.

*George P. Orr,* with him *C. Wilfred Conard* and *Allen C. Middleton,* for appellee.—The court below committed no error in rejecting the testimony of the divorced wife as to the information gained by reason of her position as wife: Robb's App., 98 Pa. 501; Brock v. Brock, 116 Pa. 109; Adams v. Bleakley, 117 Pa. 283.

The court committed no error in refusing to charge the jury that the defendant was not liable for the forcible entry because the lease of December 14, 1907, gave such right: Abel v. Pickering Co., 58 Pa. Superior Ct. 439; Lowry v. Singer Sewing Machine Co., 62 Pa. Superior Ct. 364.

OPINION BY HENDERSON, J., December 18, 1916:

The plaintiff's action was brought to recover damages for a trespass alleged to have been committed by the defendant's agents in breaking and entering the dwelling house of the plaintiff while he was absent therefrom, as a consequence of which the doors of the house were left

unsecured thereby permitting some persons unknown to the plaintiff to remove from the cellar of the house a quantity of flexible tubing and other articles, the property of the plaintiff. The evidence showed that the defendant's employees came to the plaintiff's house and having removed a board fastened to a sash, the glass of which had been broken, unlocked the window and entering thereby opened a locked door at the rear of the house and removed from the building a piano which had been theretofore delivered by the plaintiff to the defendant on a bailment lease, on which lease arrears of rent were due. The lease provided that "in default of any monthly payment, the said lessee agrees that the said party of the first part or its authorized agent or agents, at any time after any such defaulted payment shall have become due, shall have the right to enter into and upon any premises where said Pianoforte may be, and without let or hindrance take away the same by forcible possession, if necessary; hereby releasing all errors which said lessee may have for such forceable taking." The right of the plaintiff to take the piano is not disputed, as it is admitted the rent had not been paid as stipulated for in the contract. The appellant undertakes to justify the entry into the house by breaking the window under that provision of the contract above quoted which authorizes it to take away the piano by forcible possession if necessary. The learned trial judge held this provision of the contract to be "invalid and worthless" and this instruction is the subject of the sixteenth assignment of error. It may be conceded that the words employed in the agreement are broad enough to support the appellant's contention but they must be read in the light of the other provisions of the contract and the law of the land protecting the privacy of residences and the security of persons. It would not be seriously contended that license is given by the contract to commit a breach of the peace or an assault and battery and the contrary has been expressly held in Lowry v. Singer Sewing Machine Co., 62 Pa. Su-

perior Ct. 364, and Abel v. Pickering Co., Appellant, 58 Pa. Superior Ct. 439.    It is a rule of the common law that where one deprives an owner of his personal property, the latter may retake the same wherever he may find it, but this right of recaption shall never be exercised where such exertion must occasion strife or endanger the peace of society.    When such property is peaceably acquired the owner is not permitted to resort to violence to recover the same whether the possession is lawful or not: 3 Blackstone Commentaries, 3 Cyc. 1078; 2 Am. & Eng. Ency. of Law (2 ed.) 983.    The law on the subject is thus stated by our Brother TREXLER in Abel v. Pickering Co., Appellant, supra: "We think that the correct view is that where possession of proprty has been lawfully acquired as by a conditional sale or bailment and the agreement between the parties allows the owner to retake when certain conditions arise he may retake if he can do so without force, but when the taking is resisted he may not use force, he must have his remedy by proceedings at law."    That was a case of alleged assault and battery, but the principle applies as well to a dwelling house, entry into which is obtained by breaking windows or doors.    Such action has a tendency to excite a breach of the peace and invite violent resistance, and where justification is set up for such an act under a contract it should at least be made to appear by the most unequivocal terms that such license was intended by the other party to the agreement.    We are unwilling to give to the contract under consideration a construction which would permit the lessor to batter down doors or break windows or engage in other acts of violence in the exercise even of an undoubted right to the possession of the chattel.    The fact the plaintiff was temporarily away from his residence does not affect the question under the contract.    If its terms are sufficient to authorize the lessor to break into the premises when the tenant is out of the house, the same language would permit him to do so when the tenant was actually in the premises.    This

construction would subject many homes to invasion at the will of the lessors of pianos, sewing machines, and other articles of household use and would be promotive of disorder and frequent breaches of the peace.    The law affords adequate and orderly means of recovering possession of personal property similarly situated if the lessee refuse to comply with his agreement by delivering it when demanded and on that remedy the lessor should rely without a resort to such force as amounts to a breaking and entering a dwelling house or the commission of an assault and battery or a breach of the peace.

The principal injury alleged by the plaintiff was the loss of the personal property in the cellar as described in the statement of claim.    The plaintiff's trespass was alleged to have been committed on or about June 12, 1910, at which time as the plaintiff showed by his own evidence, the personal property referred to was in the house.    Between that time and the day of the trial the plaintiff and his wife had been lawfully divorced and the defendant called the wife to prove that the personal property described was not in the cellar of the house in December, 1909, and in January, 1910, as alleged by the plaintiff; that it had been removed therefrom long prior to that time.    This offer was rejected by the court on the ground that the knowledge acquired by the witness while she was the wife of the plaintiff and acquired by reason of her position as the head of his household could not be testified to.    The common law rule which excluded the husband and wife from giving evidence either for or against each other is founded partly on their identity of interest and partly on the principle of public policy which deems it necessary to guard the security and confidence of private life: Hitner's App., 54 Pa. 110.    This does not relate, however, to all the facts which came to the knowledge of the wife because of the marriage relation.    It was said in Robb's App., 98 Pa. 501, that the better and more general received opinion is that the disqualification which remains after the dissolution of the

marital relation is restricted to communications of a confidential nature and does not embrace ordinary business transactions and the conversations in which others have participated, and in Stephens v. Cotterell, 99 Pa. 188: "The mere fact that Mrs. Stephens was called to testify against the interest of the estate of her deceased husband, did not make her incompetent. She is competent to testify to facts which came to her knowledge otherwise than through the confidential relations existing between her and her husband." In Hayes's Est., 23 Pa. Superior Ct. 570, we held that the "reason for the rule of the common law which forbade husband or wife to give testimony against each other ceased on the death or divorce of one of the parties except as to confidential communications." See also 3 Wigmore on Evidence, Sec. 2237. Applying the law as embraced in the authorities cited to the facts here disclosed, we are unable to see that the knowledge possessed by Mrs. Stewart as to the contents of the cellar of the house in which she lived was in any sense a confidential matter or that it was acquired in her relation to her husband as a wife. It was knowledge possessed presumably by the domestics in the house and might have been that of any other person who had business which took him to the plaintiff's cellar. It was knowledge of a physical fact, not communicated by the husband or having any relation to or association with their relation as husband and wife. We regard the witness as competent to testify to the subject of inquiry suggested in the eleventh and twelfth assignments and the evidence should, therefore, have been received. These assignments are sustained; the other assignments are overruled. The judgment is reversed with a venire facias de novo.