## UNITED STATES v. GONELLA.

### No. 6986.

Circuit Court of Appeals, Third Circuit.

March 23, 1939.

Frank W. McKean, of Pittsburgh, Pa., for appellant.

Charles F. Uhl, U. S. Atty., and John D. Ray, Asst. U. S. Atty., both of Pittsburgh, Pa.

Before DAVIS, BIGGS, and MARIS, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from a judgment of conviction upon an indictment charging the appellant with conspiracy to violate the revenue laws in the manufacture and transportation of tax-unpaid spirits. The divorced wife of the appellant was called as a witness for the Government. She was permitted to testify over the objection of the appellant as to matters which occurred prior to the divorce and which connected the appellant with the conspiracy.

The appellant contends that under the rules of evidence applicable in the trial of criminal cases in the court below a wife may not testify against her husband. The applicable rule must be found in the common law of Pennsylvania of 1789 unless modified by Act of Congress, or unless greatly changed conditions compel a modification of the ancient rule. Melaragno v. United States, 3 Cir., 88 F.2d 264. Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L. Ed. 369.

In Pennsylvania at common law husband and wife were held to be incompetent to testify against each other in criminal cases. Respublica v. Hevice et al., 2 Yeates, Pa., 114; Com. ex rel. Boyd v. Jailer, 1 Grant's Cas., Pa., 218; Gibson v. Commonwealth, 87 Pa. 253; Paul v. United States, 3 Cir., 79 F.2d 561.

Wigmore states that although the rule was enforced by English courts as far back as the 16th century it was not until some time later that an attempt was made to justify it. One of the reasons thereafter assigned for the rule was that husband and wife were one and that to allow either to testify against the other would amount to self incrimination. This so-called reason is based on an ancient fiction of the common law. This fiction that husband and wife are one arose in medieval England and while it still survives to some extent in the law of property, e. g. estates by entireties, it is in hopeless conflict with the modern conception of the proper status of married women and has consequently almost wholly lost its place in our law. Other reasons for the rule, such as the natural repugnance to obtaining a conviction by testimony of the spouse and the desire to preserve the peace of the accused's home life, stress a sentimental regard for the accused as of greater importance than the welfare of the community. Wigmore on Evidence, §§ 2227–2245, Second Edition.

Even though one or all of these reasons may be persuasive when applied to cases where the marital relation exists

they are clearly without force when that relation has been terminated. By operation of the divorce laws the unity of husband and wife, whether based on fact or fiction, has been destroyed. Since the parties involved have terminated the marital status there is no home life the peace and serenity of which may be destroyed. However commendable the sentiment against permitting a wife to testify against her husband may be, this sentiment cannot be transferred to the case of the divorced wife.

At common law in Pennsylvania where the marital relation has been terminated by death the rule as to incompetency ceases. It was said in Gebhart v. Shindle and another, 15 Serg. & R., Pa., 235, 239: "The policy of the rule, excluding husband and wife from being witnesses for or against each other, is founded on the supposed bias arising from marriage, and the consideration that the interest of husband and wife is the same, or from the supposed union of persons; Baker v. Dixie, Hardwicke's Cases 264; 1 Bl.Com. 443; Fenner v. Lewis, 10 Johns. [N.Y., 38], 44, or from the necessity of preserving the peace of families. Neither of these causes applied here; the union was dissolved by death, the legal policy of exclusion no longer existed."

In Hayes' Estate, 23 Pa.Super. 570, involving a will controversy, the husband of the testatrix was permitted to testify to facts tending to prove that the testatrix had committed adultery. The Court said: "The reason for the rule of the common law which forbade husband or wife to give testimony tending to criminate the other, although not a party to the suit, was the disturbance of the marital relation which would result from the admission of such testimony. Upon the termination of that relation by the death of one of the parties the reason of the rule ceases, except as to confidential communications, and the rule itself as applied to such a case, has not been established or preserved by the act of 1887."

It has likewise been held in Pennsylvania that incompetency ceases upon divorce. Stewart v. F. A. North Co., 65 Pa.Super. 195. In the case just cited the divorced wife of the plaintiff was permitted to testify on behalf of the defendant and against the interests of her former husband as to a matter which took place prior to the divorce.

While Gebhart v. Shindle, Hayes's Estate and Stewart v. F. A. North Co., supra, involved civil suits, the reasons given for relaxing the rule of incompetency after death or divorce are equally valid when applied to criminal cases. Indeed in Hayes's Estate, supra, the question at issue was whether the deceased spouse had committed a crime. We therefore conclude that the court below committed no error in permitting the divorced wife to testify against her husband.

It should be noted that the matters to which the appellant's wife testified took place between her husband and third persons and did not involve communications, confidential or otherwise, between her husband and herself. The question of the admissibility of testimony by a divorced wife as to a confidential communication made by the husband during the existence of the marital relation is therefore not involved and not decided in the present case.

Judgment affirmed.