Hunter *v.* Hunter, Appellant.

Argued April 16, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*George E. Beechwood,* with him *Conlen, LaBrum & Beechwood,* for appellant.

*Thomas F. Mount* and *Joseph W. Henderson,* for appellee.

OPINION BY HIRT, J., September 26, 1951:

On a charge of indignities the lower court entered a decree of divorce. In spite of the fact that the master,

from a patient analysis of volumes of testimony, recommended a decree, we find it necessary to reverse. The issue does not depend upon the credibility of witnesses but rather on the significance of undisputed facts established principally by plaintiff's own testimony which in our view reveal an injured but not an innocent husband. Under our divorce law—as amended by the Act of March 19, 1943, P. L. 21, 23 PS §10—to obtain a divorce from the bond of matrimony, a complaining spouse must be *both* injured and innocent.

In middle life plaintiff married the defendant on April 6, 1945, in New York City. It was a second marriage for him. Thereafter they lived in a more-than-adequate home provided by plaintiff in Philadelphia. He is Vice-President of Lavino Shipping Company. His duties in the management of the business are exacting. He has been successful and his income is large. Minor differences arose between the parties in 1946 and increased both in frequency and seriousness until June 1949 when the plaintiff left his wife. The gravamen of his complaint goes to the defendant's excessive drinking beginning in 1947 and his humiliation because of her conduct on occasions in public, especially among his friends and business associates. Plaintiff also charged that frequently when drinking to excess defendant was belligerent and bent upon tantalizing him in the home by false accusations imputing adultery with named women, and otherwise by berating him unreasoningly and with profanity, making his life unbearable by day and preventing him from getting necessary rest at night.

Defendant does not defend the charge on the ground that she is addicted to alcohol involuntarily. It is not asserted that she is an alcoholic and on that account unanswerable for her conduct in public or her attitude toward her husband in the privacy of their home. On

the contrary, in the face of what we accept as clear proofs to the contrary she denies that she has drunk liquor to excess. And from our independent consideration of the testimony we find it established that defendant while under the influence of intoxicating liquor is chargeable with acts constituting the course of conduct complained of by the plaintiff. Moreover our conclusion in this respect has been arrived at in total disregard of an unusual phase of plaintiff's evidence which we view as wholly incompetent and inadmissible, for reasons which we think it necessary to state because of the importance and novelty of the questions involved.

Plaintiff complained of frequent tirades he was subjected to by the defendant at night in their common bed chamber. The adjoining room was occupied by plaintiff's son, by a former marriage. Pursuant to prearrangement by plaintiff the son set up a microphone in the bedroom of the parties on the nights of April 7, 8 and 9th and the early morning of April 10th, 1949, and connected the device with a wire recording mechanism installed in his room. By this means he, with plaintiff's knowledge and consent, attempted to make a recording of what was said between the parties on the four occasions. This effort was not entirely successful but the recording, insofar as intelligible when reproduced, was read into the record over appellant's objection.

The technique to which plaintiff thus resorted in an effort to build up his case was far more reprehensible than that condemned in the recent case of *Garroway v. Garroway*, 163 Pa. Superior Ct. 317, 320, 61 A. 2d 379. The parties were not on an even footing. Plaintiff was conscious that a record was being made of what he said; the defendant had no reason to suspect this invasion of her privacy. The result was a self-serving record directed and for the most part controlled by plaintiff. During the course of the discus-

sions not only did plaintiff urge the defendant to "speak up, I can't hear you" but he goaded her into making derogatory aspersions and he deliberately prolonged the discussions when she indicated that she wanted to go to sleep. Even if admissible the recordings could be given little weight under the circumstances. But they were wholly incompetent as a matter of law and the objection to their admission should have been sustained.

In making such recordings it is possible for a competent operator to shut out, or blur, parts of a conversation by use of the volume control and later pick it up again, thus eliminating unfavorable testimony. We do not charge the son with intentionally deleting parts of the conversations in this case. We will assume the unintelligible parts of the recordings are due to his lack of expertness in making them and not to design. But since parts of what was said by defendant, on all of the occasions are lacking, the recordings, on that ground alone, are not admissible against her. In general such conversations are admissible as a whole or not at all. In so holding however we do not intend in any way to qualify what we said in *Com. v. Clark*, 123 Pa. Superior Ct. 277, 285, 187 A. 237, to this effect: "The phonograph, the dictaphone, the talking motion picture machine and similar recording devices, with reproducing apparatus, are now in such common use that the verity of their recording and reproducing sounds, including those made by the human voice in conversation, is well established; and as advances in such matters of scientific research and discovery are made and generally adopted, the courts will be permitted to make use of them by way of presenting evidentiary facts . . ." Admittedly, under proper circumstances, even in a divorce case, recorded conversations may be admissible provided that the rules governing privileged communications are not thereby violated.

Here, the recordings are inadmissible on the ground, also, that as to the wife the communications were privileged. The relations between husband and wife are most intimate and many subjects are discussed by them in their bedroom only because of the cloak of absolute privacy there provided. In general it may be inferred that because of the confidence which the marital relation inspires, communications made by one spouse to the other "were made with the intent and in the confidence mentioned": *Seitz v. Seitz,* 170 Pa. 71, 32 A. 578. The rule at common law, re-established by statute in Pennsylvania (Act of May 23, 1887, P. L. 158, §5(b), 28 PS §316) is that confidential communications between husband and wife cannot be divulged by either without the consent of the other. That rule is based on public policy and with a view to preserve the harmony and the confidence of the relationship between husband and wife. Whether a particular communication between husband and wife is privileged depends upon its nature and character and the circumstances under which it was made. Henry, Pa. Trial Ev. 3rd Ed. §411; *Stewart v. F. A. North Co.,* 65 Pa. Superior Ct. 195, 202; 8 Wigmore on Evidence, §2337. Once a communication between husband and wife has been made in confidence its privileged character outlasts divorce and even death (Cf. *Brock v. Brock,* 116 Pa. 109, 9 A. 486) and is in no way affected by the statutory provision of §50 of The Divorce Law of May 2, 1929, P. L. 1237, 23 PS §50 making husband and wife competent to testify against each other "to the facts" in a divorce action. 2 Freedman on Marriage and Divorce, §§749, 751. In our view the recordings in this case were of confidential utterances of the wife; the circumstances clearly so stamp them. There is nothing in this record indicating that defendant waived her privilege (Cf. *Huffman et al. v. Simmons et al.,* 131 Pa. Superior Ct. 370, 200 A. 274) and plaintiff cannot do so for her.

Plaintiff under the circumstances cannot justify the admission of the recordings in evidence under the 'eavesdropping rule'. It is generally held that communications between husband and wife are no less confidential, inter se, because overheard although the eavesdropper in testifying to what he heard is absolutely unaffected by the rule of privilege. The spying or eavesdropping nature of an overheard conversation may affect its weight as evidence but not its admissibility. 58 Am. Jur., Witnesses, §§365, 383. But to admit the recordings of the defendant's voice in this case, made with the connivance of plaintiff, would enable plaintiff to utilize mechanical means of repeating her words, thus accomplishing indirectly what he could not do directly. Plaintiff was a party to their making and accordingly the recorded conversations when read into the record, in effect, became his testimony of privileged communications which the law holds inviolate.

But as we have indicated, even though injured, plaintiff is not entitled to a divorce. He had no complaint as to the defendant's conduct when not drinking. His proof of indignities rests entirely upon her acts induced by intoxication in some degree. As to her conduct on those occasions plaintiff has no legal ground for complaint. Except to urge her to drink less and to suggest to her, ineptly it seems to us, that she consult a psychiatrist or doctor he made no effort to control his wife's drinking habits. On the contrary he actually encouraged her to continue her practices. Before the marriage he sent a case of liquor to her apartment in New York City intended for their joint use and the entertainment of their friends on his frequent business trips to New York, and he referred to at least one occasion before the marriage when she drank too much. In Philadelphia they belonged to a set with whom cocktails apparently were a necessary prelude to every social activity. Plaintiff had cases of liquor which he

stored on the third floor of the home. There was other liquor in an unlocked playroom and liquor was always available on a portable bar or on the sideboard in the dining room of the home. From various sources it was easy for defendant to keep a bottle of liquor concealed in a lower cupboard of the pantry for her own use. And during the period of defendant's overindulgence plaintiff very often had a "cocktail or two" with her before dinner, although he had reason to know that she already had been drinking. Under the circumstances it was for him to make every reasonable effort to save the marriage before charging her with its failure. With full knowledge of his wife's weakness plaintiff made no effort to change their social drinking practices or the pattern of their home life. He did not remove liquor from the house nor stop serving it there. On the contrary he made quantities of intoxicants accessible to the defendant at all times. It may have been desirable that defendant stop drinking entirely. To accomplish that end plaintiff well might have set the example which undoubtedly would have been more effective than any precept.

This case is ruled by the principle of *Othmer v. Othmer*, 158 Pa. Superior Ct. 384, 45 A. 2d 389. Since the plaintiff made no serious effort to shield the defendant from her weakness or to effect a change in her drinking habits he is not an injured *and* innocent spouse and is not entitled to a divorce. Cf. *Carter v. Carter*, 166 Pa. Superior Ct. 499, 72 A. 2d 621.

Decree reversed and complaint dismissed.

The lower court by order allowed the defendant counsel fees in the sum of $5,000. This allowance was adequate and there is no merit in her appeal from the order of the court refusing to increase the amount.

Order affirmed.