372 A.2d 451

**COMMONWEALTH of Pennsylvania**

v.

**Thomas BORRIS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 11, 1976.

Decided March 31, 1977.

See also 247 Pa.Super. 266, 372 A.2d 454, 247 Pa.Super. 273, 372 A.2d 458, 247 Pa.Super. 274, 372 A.2d 459 and 247 Pa.Super. 276, 372 A.2d 459.

Donald J. McCue, Connellsville, submitted a brief for appellant.

Conrad B. Capuzzi, District Attorney, Uniontown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant raises several allegations of error. We conclude that none has merit and, therefore, we affirm the judgment of sentence.

On May 27, 1975, Pennsylvania State Trooper Nickel swore out a criminal complaint in which appellant was charged with the October 22, 1973 burglary of the Sons of Italy Club in Connellsville, Fayette County.[1] Appellant was also charged with conspiring with Joseph and Dominic Mancuso and Marvin Wedge to commit the burglary. Marvin Wedge co-operated with the authorities and appeared as a Commonwealth's witness against his co-conspirators. The Mancusos, also charged with burglary and conspiracy, were tried along with appellant. Trial commenced on December 8, 1975. On December 17, the jury found all defendants guilty as charged. After denial of post-trial motions, the lower court sentenced appellant to make restitution and to serve concurrent terms of five to ten years' imprisonment. This appeal followed.

Initially, appellant contends that the lower court erred in granting the Commonwealth's motion for an extension of time in which to bring appellant to trial, see Rule 1100(c), Pa.R.Crim.P., 19 P.S. Appendix, and that the court erred in denying appellant's motion for a change of venue. Appellants co-defendants, Dominic and Joseph Mancuso, raised those issues at Nos. 544 and 545 April Term 1976. The relevant facts are identical. Therefore, we rely on our discussion in *Commonwealth v. Mancuso*, 247 Pa.Super. 245, 372 A.2d 444 (filed March 31, 1977), in rejecting appellant's first two allegations of error.

In addition, appellant contends that the lower court committed reversible error "when it refused to exclude the testimony of Lucinda Borris, ex-wife of [appellant] after it became apparent from the Commonwealth's offer of proof, that [her] testimony . . . was to be testimony between her and her husband, . . ., at a time when they were married and that the testimony fell within the doctrine of privileged communications."

1. In 1975, the Fayette County district attorney submitted over 300 charges of burglary, robbery, arson and conspiracy involving eleven defendants, several of whom had been members of the Connellsville Police Department during the commission of the various offenses. The instant litigation arose from those indictments.

The district attorney made the following offer of proof at sidebar:

"Q. You are Lucinda Borris?

"A. Yes, I am.

"Q. And you were married to Tom Borris, one of the defendants in this case, is that correct?

"A. Yes.

"Q. You are no longer married to him, is that correct?

"A. Correct. . . .

"Q. Cindy, did you know about the Sons of Italy burglary?

"A. Yes, I did.

"Q. Now, how did you know about it?

"A. Tom had told me about it.

"Q. Was anybody else present when Tom told you about this burglary?

"A. No.

"Q. All right. Did you receive any phone calls relative to this burglary?

"[Counsel for the Mancusos]: Objection, your Honor, I think that the foundation has been established with that last question.

"[District Attorney]: No, it hasn't.

"[The Court]: There is no jury present. We will overrule the objection.

"[District Attorney]: Did you receive any phone calls relative to this burglary?

"A. Yes, we did.

"Q. Who?

"A. Dominic Mancuso had called.

"Q. Cindy, you are going to have to speak up. I can't hear you.

"A. Dominic Mancuso had called.

"Q. Did you know for sure it was Dominic Mancuso?

"A. Yes, I did. Tom told me who it was. . . .

"Q. Okay, now, after Salvy called, did you call anyone else?

"A. Yes, we called Wedges.

"Q. Who called them?

"A. I believe I dialed the phone but Tom talked to Marvin. . . .

"Q. Do you remember what Tom said to Marvin?

"A. He told Marvin that Salvy wanted them to meet him at Blue Ridge so that they could get the tanks. . . .[2]

"Q. Now, Cindy, after the burglary, did you ever hear Tom talk about his involvement in the Sons of Italy burglary in the presence of anyone else?

"A. Yes, after the burglary—the day after or maybe the next day after that, we were at the Wedges' home and they were discussing doing the robbery. They were talking about how Joey Mancuso had turned the juke box up loud to sort of muffle the sound of what they were doing.

"Q. Who was doing this talking?

"A. Tom and Marvin.

"Q. Who all was there?

"A. Sue Ann and myself and Tom and Marvin."

After cross-examination by counsel for appellant and for the Mancusos, the court ruled that ". . ., based on the testimony which we have heard, . . . she is not incompetent to testify merely because she was married to [appellant] at the time these incidents took place because we do not believe that that is the standard which was applicable. The marriage has been severed by divorce and whether or not she would now be competent to testify would be determined on whether or not this was a confidential communication between the parties. We would permit her to testify as

2. The reference to "tanks" is apparently to tanks of acetylene gas and oxygen used during the burglary to break into the safe on the premises.

to anything which was stated by [appellant] in the presence of other persons, including the telephone conversation, and note an exception by counsel for [appellant] and the Mancusos. However, we would caution the District Attorney to restrict the testimony solely to that testimony which was in the presence of third parties. Anything which was stated between the two in the privacy of their own home or when no one else was present, we feel is properly excluded."

█ Two privileges govern testimony by one spouse against the other. The first is an absolute prohibition of incompetence preventing one spouse from testifying against the other during the existence of a valid marriage. See *Canole v. Allen*, 222 Pa. 156, 70 A. 1053 (1908); *Bell v. Throop*, 140 Pa. 641, 21 A. 408 (1891); III Freedman Law of Marriage and Divorce in Pennsylvania, § 749 (2d Ed. 1957). That principle has long been codified into the law of Pennsylvania. Act of May 23, 1887, P.L. 158, § 5, cls. (b, c); 28 P.S. §§ 316–317; Act of May 23, 1887, supra, as amended, Act of April 27, 1909, P.L. 179, § 1; Act of May 11, 1911, P.L. 269, § 1; 19 P.S. § 683. See also, *Commonwealth v. Moore*, 453 Pa. 302, 309 A.2d 569 (1973). The second privilege governs confidential communications made during a marriage, subsequently terminated by death or divorce. The Act of 1887 does not contemplate those situations. See 2 Henry, Pennsylvania Evidence § 699 (4th Ed. 1953). Our courts have followed the common law rule in those cases: "We have held that the reason for the rule of the common law, which forbade husband and wife to give testimony against each other, ceased on the death or divorce of one of the parties, except as to confidential communications. *Hayes's Est.*, 23 Pa.Super. 570. The disqualification that remains after the dissolution of the marriage is restricted to communications of a confidential nature. *Stewart v. F. A. North Co.*, 65 Pa.Super. 195." *Commonwealth v. Beddick*, 180 Pa.Super. 221, 227, 119 A.2d 590, 593 (1956). See generally, McCormick, Evidence, § 66 (Cleary Ed. 1972).

█ Applying the foregoing principle, we conclude that the lower court was correct in ruling that appellant's wife

could testify.   Only confidential communications survived appellant's divorce from the witness.   When appellant discussed the commission of the offense with third parties in his wife's presence, he lost his claim that the communication was confidential.   See *Commonwealth v. Beddick,* supra.[3]

Because appellant has alleged no meritorious ground for reversal, we affirm the judgment of sentence.

SPAETH, J., concurs in the result.

**3.**  Appellant also contends that the lower court "committed reversible error by failing to caution the jury a minimum of several times that the testimony of Marvin Wedge came from a tainted or corrupt source and that the jury must critically weigh and examine the testimony of this Commonwealth witness."   As the question implies, the court's charge on the weight to be accorded an accomplice's testimony was correct.   Appellant contends only that further emphasis should have been placed on the charge.   The appellant cites no authority for this novel proposition.   We find the contention frivolous.   Appellant's fourth contention is that the Commonwealth did not prove appellant guilty beyond a reasonable doubt: "The only testimony which the Commonwealth presented was the testimony of Marvin Wedge, his wife, Sue Ann Wedge and Lucinda Borris, ex-wife of the defendant, Thomas Borris.   A reasonable man could not take this testimony at face value and convict the defendants herein.   There is no substantive proof and there is no substantive evidence, eminating [sic] from a reliable or credible source to show that the defendants were guilty of the crimes charged."   Rephrased, the challenge is that the jury should not have believed the Commonwealth's witnesses.   The issue of credibility is properly for the factfinder and will not be reversed absent clear abuse.   *Commonwealth v. Zapata,* 447 Pa. 322, 290 A.2d 114 (1972).