500 A.2d 440

**COMMONWEALTH of Pennsylvania**

v.

**Tyrone CLARK, Appellant.**

Superior Court of Pennsylvania.

Argued March 25, 1985.

Filed Sept. 27, 1985.

Reargument Denied Nov. 18, 1985.

o

John L. Walker, Beaver, for appellant.

Ahmed T. Aziz, Assistant District Attorney, Sewickley, for Com., appellee.

Before McEWEN, CERCONE and HANDLER*, JJ.

CERCONE, Judge:

Appellant, Tyrone Clark, was sentenced to life imprisonment following his conviction before a jury of second degree murder. In this direct appeal he raises a number of issues, one of which we find to have merit. Therefore, we reverse and grant a new trial.

The issue which was raised and properly reserved as error was the trial court's admission of the testimony of appellant's former wife into evidence as part of the Commonwealth's case in chief. Her testimony consisted of her husband's communications to her prior to and after his commission of an armed robbery of a gas station which resulted in the death of the attendant.

Mrs. Clark testified that on the night in question, she picked up her husband at work at 11 p.m. They drove to their home nearby, but her husband, appellant, left a short while after, carrying a shotgun. He told her that he was going to rob a gas station. About twenty minutes later he returned with the shotgun and told Mrs. Clark that he thought he shot and killed somebody and to call the police. He said that the man he was holding up at the gas station had grabbed at the gun, causing it to go off accidentally. Mrs. Clark reported the incident anonymously to police after which she accompanied appellant to a location where he broke the shotgun in half and disposed of the pieces.

■ Although they were married at the time of the incident on August 23, 1977, they were divorced in January

---

* Judge Earl R. Handler of the Court of Common Pleas of Indiana County, Pennsylvania is sitting by designation.

1980. At trial in August 1980, counsel for appellant objected to Mrs. Clark's testifying on the grounds that such testimony would violate the privilege protecting confidential communications between spouses. This common law privilege is codified in 42 Pa.C.S.A. § 5914:

**Confidential communications between spouses**

Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

This evidentiary rule that a husband and wife may not testify as to confidential communications made to one another during the marriage remains in force even after death or divorce. *Commonwealth v. Peluso,* 240 Pa.Superior Ct. 330, 361 A.2d 852 (1976).

The communications made by appellant to his wife minutes after the within criminal incident were indeed of a confidential nature. While the trial court so held, it concluded that because appellant at a later time and while incarcerated related substantially the same communication to two fellow inmates, appellant waived any privilege against disclosure of the confidential communication to his wife. Thus, the question for our determination is whether such a privilege may be waived by a spouse by subsequently relating the substance of the confidential communication to third parties.

Appellant could have waived the privilege if he had not objected to Mrs. Clark's testimony at trial. 42 Pa.C.S.A. § 5914. *See also Commonwealth v. Wilkes,* 441 Pa. 246, 199 A.2d 411 (1964) (Confidential communications may not be divulged by either spouse without the consent of the other.) Moreover, utterance of the communication in the presence of third parties destroys its confidentiality. *Commonwealth v. Borris,* 247 Pa. Superior Ct. 260, 372 A.2d 451 (1977).

However, what happened in this case is different from a confidential communication which is spoken to the wife in

the presence of a third person; it was also spoken to third persons after having been initially told to a spouse immediately after the murder was committed in the privacy of their marital relationship.

■ Our starting point is a consideration of the purpose behind the privilege for confidential communication between spouses.[1] The public policy sought to be enhanced by the privilege is the preservation of marital harmony and the resultant benefits to society from that harmony. *Hunter v. Hunter*, 169 Pa. Superior Ct. 498, 83 A.2d 401 (1951). As one commentator reflected, courts that recognize this purpose have consistently refused to waive the privilege even though the particular marriage at issue has ended.[2] The privilege that protects information privately disclosed between husband and wife in the confidence of the marital relationship was once described by the United States Supreme Court as "the best solace of human existence." *Stein v. Bowman*, 13 Pet. 209, at 223, 10 L.Ed. 129 (1839) in *Trammel v. U.S., supra,* 446 U.S. at 51, 100 S.Ct. at 913.

■ Given this stated purpose, then, for protecting such communications between spouses, we must decide whether the nature of the communications changes once the speaker spouse reveals their substance to third parties. Clearly, the substance of the latter communications cannot be considered confidential just because it was once that. Third parties were free to testify against appellant. But, keeping the purpose of the privilege uppermost, we are not convinced that the confidentiality that inhered in the initial conversation can be wiped away when the speaker for whatever reason, talks to the third parties about the same

1. A related privilege is that prohibiting spouses from testifying against each other, that is, regarding competency. See 42 Pa.C.S.A. § 5913. This privilege has been deteriorating with the addition of refinements and exceptions. *See Trammel v. U.S.,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (witness spouse is holder of privilege). However, the incompetency of one spouse to testify against the other cannot be waived and disappears upon death or divorce, unlike the privilege with which we are concerned in this case.

2. See 47 *Missouri L.Rev.* 888, 896 (1982).

matters. Especially is this apparent when the speaker objects to his former spouse's testimony at trial, as in this case, which is the only waiver opportunity specified in the statute.

Our perusal of case law revealed a reference in *Commonwealth v. Peluso, supra,* 240 Pa.Super. at 337, 361 A.2d at 856, to *Whitehead v. Kirk,* 104 Miss. 776, 61 So. 737 (1913) for the proposition that a subsequent declaration in the presence of others does not remove the confidentiality of what was first disclosed privately. The Supreme Court of Mississippi explained:

When the husband and wife are alone, everything said and done is under the protection of the rule and the declarations and conduct of both are presumed to be confidential. That similar acts occur and similar words are used in the presence of others raises no presumption that the presumably confidential declarations and conduct have been thereby released, and that those things said and done in privacy then become public property. Of course, many things are said and done by husband or wife, which upon their face bear no semblance of confidence; but ordinarily what a wife says to her husband alone is said because he is her husband, and because she can speak freely, undisturbed by the possibility that he will repeat what she says. For this reason, we think, when communications between husband and wife can be reasonably construed as confidential, the rule of public policy applies, and, no matter what may happen in particular cases, the courts will not permit a disclosure. *Id.* at 813–14, 61 So. at 738.

Despite the increased rate of divorce and other societal customs that have been revolutionized since Justice Cook commented on the same privilege which is our concern, his words ring true. Despite what a speaker spouse chooses to utter at a later time, his original confidence remains intact not merely for his benefit, but for the good of marriage as an institution. It is the relationship that existed at the moment of communication which society seeks to protect by the privilege, not the substance of the message itself.

Thus, no proscription lies against the third parties' testimony and regardless of what transpires later with the relationship, whether death or divorce, the privilege survives.

■ This all leads us, then, to conclude that the trial court erred in permitting Mrs. Clark to testify against her former husband, appellant herein, as to the confidential communications made by him to her during the time surrounding the criminal incident.

■ A further question arises as to whether her observations of appellant washing the shotgun and disposing of it also fall within this privilege. While there is no Pennsylvania case law regarding this issue, it would be anomalous to exclude acts done at the time the confidential oral communications were made from the protection of the privilege. The marital relationship gave rise to both the statements and the actions surrounding the gun. Thus, Mrs. Clark should not have testified as to the statements or to appellant's simultaneous acts, as both resulted from the marital relationship.

For the above reasons, judgment of sentence reversed and case remanded for a new trial. Jurisdiction is relinquished.

McEWEN, J., concurs in the result.