565 A.2d 782

**COMMONWEALTH of Pennsylvania**

v.

**Andrew W. HANCHARIK, Appellant.**

Superior Court of Pennsylvania.

Argued June 19, 1989.

Filed Oct. 27, 1989.

338

Phillip B. Friedman, Bradford, for appellant.

Robert L. Saunders, Bradford, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

JOHNSON, Judge.

On this appeal, we are asked to determine whether spousal incompetency to testify to confidential communications under 42 Pa.C.S. § 5914 is removed by virtue of the excep-

tions to such incompetency set forth in 42 Pa.C.S. § 5913. We hold that it is. Since this case involved violence done upon a minor child in the care or temporary custody of the defendant/husband, an enumerated exception found in § 5913, the wife was a competent witness against her husband. There being no merit, therefore, in the defendant/husband's assertion on appeal that defense trial counsel was ineffective in failing to object to portions of the wife's testimony, we affirm the judgment of sentence.

A jury convicted Andrew Hancharik of involuntary deviate sexual intercourse, indecent assault, and corruption of a minor. The Honorable John M. Cleland, President Judge, entertained Hancharik's amended motions for new trial and in arrest of judgment, denied the same, and sentenced Hancharik to an aggregate term of six to fifteen years' imprisonment. On this direct appeal, Hancharik advances three issues:

1. Alleged trial counsel ineffectiveness in failing to call readily available character witnesses;

2. Alleged court error concerning declaration of mistrial or cautionary instruction relating to testimony about conversations between both spouses and a marriage counselor; and

3. Alleged trial counsel ineffectiveness with respect to wife's testimony as to confidential communications.

■ At issue 1, Hancharik contends that the key issue in the case was one of credibility. Trial counsel had been provided with a list of possible character witnesses, but did not call all of them. Hancharik contends that where credibility is the key issue, counsel's failure to call all readily available character witnesses constitutes ineffective assistance of counsel. We do not agree.

Our supreme court, speaking through Mr. Justice Papadakos, has recently restated the standard to be applied in reviewing ineffectiveness claims:

We have taken great pains to set forth the criteria that must be established when one attempts to assert the

ineffectiveness of counsel. The threshold inquiry in such claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim.... If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interests.... Finally, we require that the defendant establish how counsel's commission or omission prejudiced him....

In making assertions of ineffectiveness, we also require that an offer of proof be made alleging sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective. This is so because we frown upon considering claims of ineffectiveness of counsel in a vacuum.

*Commonwealth v. Durst*, 522 Pa. 2, ——, 559 A.2d 504, 505 (1989), (citations omitted).

As to the alleged failure to call character witnesses, the record is clear that defense counsel thoroughly discussed possible character evidence with Hancharik and, in fact, did call one individual on a list reviewed by counsel. Not only was the decision not to call all of the witnesses made only after careful deliberation and consultation with Hancharik but the record does not establish that any of the witnesses would have been available or that their testimony would have advanced the fact-finding process. *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986), *cert. denied*, *Peterkin v. Pennsylvania*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010, (1987); *Commonwealth v. Flanagan*, 375 Pa.Super. 497, 544 A.2d 1030 (1988).

We conclude that issue 1 is without merit.

■ At issue 2, Hancharik contends that a mistrial was mandatory following Hancharik's wife's testimony regarding a conversation between herself, Hancharik and a mar-

riage counselor. During the Commonwealth's case-in-chief, Mrs. Hancharik testified:

A   After I got out of the hospital. I refused to leave the hospital unless he agreed to see a counselor with me and the doctor set it up and we seen her briefly before I was discharged on that Friday afternoon and she more or less told both of us all we needed to do was go home, have sex, everything was going to be fine in our marriage. He should forget about his relationship with [the minor victim], he could get in a lot of trouble. He at that point told the counselor that [the minor victim] liked to kiss him and she informed him he could go to jail for that.

MR. LANGELLA: I object.

THE COURT: Sustained.

MR. LANGELLA: I'd ask the court to instruct the jury to disregard any statement as to what the counselor apparently said.

THE COURT: I don't know that the content came out.

MR. SAUNDERS:

Q   ....

A   ....

Q   ....

A   ....

THE COURT: I will instruct the jury anything that the counsellor told Mr. Hancharik as part of the counseling session, that's hearsay and not competent evidence and should not be considered by you.

Notes of Testimony, June 25, 1986, pages 49–50.

The trial court's cautionary instruction, to the effect that the jury should not consider anything the counselor told Hancharik, was immediate, clear and adequate. Hancharik's counsel did not move for mistrial when the testimony was presented. Nor does our review of the record disclose any reason of manifest necessity for declaration of a mistrial. We find no trial court error with regard to issue 2. Pa.R.Crim.P. 1118, *Commonwealth v. Reardon*, 374 Pa.Super. 212, 217, 542 A.2d 572, 574 (1988).

■ We turn now to issue 3, the alleged ineffectiveness of trial counsel with respect to wife's testimony as to statements made by Hancharik to his wife. Hancharik contends that trial counsel was ineffective in failing to interpose objections, founded upon the spousal privilege, to the wife's testimony that (a) Hancharik had informed her that he was desirous of adopting an older girl, (b) Hancharik had stated that he loved the minor victim very much and needed a daughter to complete the family, (c) Hancharik stated that he could only relax when the minor victim was around, and (d) there existed marital disharmony and a poor sexual relationship between herself and Hancharik. Hancharik relies upon 42 Pa.C.S. § 5914, which provides:

**§ 5914. Confidential communications between spouses**

Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

Hancharik concedes that, under limited circumstances, a spouse will be permitted to testify against his or her mate in a criminal proceeding, wherein an act of violence by the defendant against a minor child in that defendant's care is alleged. Prior to June 29, 1989, when the section was amended by Act No. 16 of 1989, 42 Pa.C.S. § 5913 provided:

**§ 5913. Spouses as witnesses against each other**

Except as otherwise provided in this subchapter, *in a criminal proceeding husband and wife shall not be competent or permitted to testify against each other, except that* in proceedings for desertion and maintenance, and *in any criminal proceeding against either for* bodily injury or *violence attempted, done or threatened upon* the other, or upon the minor children of said husband and wife, or the minor children of either of them, or *any minor child in their care or custody, or in the care or custody of either of them, each shall be a competent witness against the other,* and except also

that either of them shall be competent merely to prove the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other.

(emphasis added).

Hancharik argues that the competency exception contained in 42 Pa.C.S. § 5913 permits Mrs. Hancharik to take the stand, but she is not permitted to testify to confidential communications during marriage, by virtue of § 5914. He seemingly relies on dicta contained in a footnote in *Commonwealth v. Rough*, 275 Pa.Super. 50, 418 A.2d 605 (1980) to conclude that the removal of testimonial incompetency under the "violence" exception to § 5913 does not remove the incompetency barring a spouse from divulging the contents of confidential communications on the witness stand. We reject this contention.

In *Commonwealth v. Rough, supra*, the defendant-step-father was convicted of rape and corrupting the morals of a minor. On appeal, he argued that the trial court erred in permitting the victim's mother, his wife, to testify concerning a telephone conversation between the two of them. A third person had placed the telephone call, handed the telephone to the defendant, and remained in the vicinity during the phone conversation. Judge Gwilym A. Price, Jr., speaking for the three-judge panel of this court, found that the communication was not confidential inasmuch as the defendant evinced no concern about the presence of a third party and took no precautions against the reception of the contents of the conversation by the third party. 275 Pa.Super. at 64–65, 418 A.2d at 613. Judge Price went on to find that, even if the conversation should not have been admitted, it could not have contributed to the verdict and therefore must be classed as harmless error. *Id.*

The *Rough* case, therefore, cannot be viewed as holding that the privilege set forth in § 5914 overrides the exception set forth in § 5913, the judgment of sentence for rape in that case having been affirmed. In addressing the testimonial privilege, the following footnote is set forth in *Rough:*

6. There is no dispute that the absolute prohibition preventing one spouse from testifying against the other during coverture, codified in the Act of May 23, 1887.... [substantially re-enacted as 42 Pa.C.S. § 5913] is inapplicable due to an exception within the statute permitting testimony in proceedings involving violence against the minor child of either. Competency under this exception does not abrogate the general privilege concerning confidential communications made during marriage.

275 Pa.Super. at 64, n. 6, 418 A.2d at 612, n. 6.

We understand the footnote as indicating nothing more than this: when the exception is not applicable, the general privilege continues to be in effect.

The section upon which Hancharik relies, in seeking to exclude his wife's testimony, § 5914, begins by pronouncing: "Except as otherwise provided in this subchapter ..." Common sense dictates that this is a clear reference to the preceding § 5913 and the following § 5915, dealing with spousal rebuttal testimony. Had the legislature intended to make the general spousal privilege concerning confidential communications overarching, it would have simply foregone the prefatory exceptions in §§ 5913 and 5915.

We find *Commonwealth v. Nadolny*, 163 Pa.Super. 517, 63 A.2d 129 (1949) to be strikingly similar to the case we now review. In *Nadolny*, the defendant had raped his sixteen-year old stepdaughter. At trial, the defendant sought to bar the testimony of his wife that the defendant had admitted commission of the offense to her. This admission was clearly a confidential communication between spouses. The trial court overruled the objection and permitted the testimony of the wife. The statute in effect at that time was the predecessor of 42 Pa.C.S. § 4913, namely 19 P.S. § 683.

The *Nadolny en banc* court properly assumed that the only issue to be decided was whether a *consensual* rape fit within the term "violence attempted, done or threatened." The court stated:

We have no doubt that the mother of the victim is a competent witness against her husband in a criminal prosecution for statutory rape. *If the offense were a common law rape, no question could arise.*

163 Pa.Super. at 519, 63 A.2d at 130. (emphasis added). On this appeal, we shall follow *Nadolny.*

More recently, our court has held that not only is the spouse competent to testify in domestic violence cases, she or he may be *compelled* to testify. *Commonwealth v. Hess,* 270 Pa.Super. 501, 411 A.2d 830 (1979), *appeal dismissed,* 499 Pa. 206, 452 A.2d 1011 (1982).

The purpose of the exception found in 42 Pa.C.S. § 5913 is to protect spouses and minors from domestic violence. This protective policy clearly outweighs the marital harmony policy which underlies the general language found in this section and in § 5914. Packel & Poulin, *Pennsylvania Evidence,* § 601.2, pages 370–71. (West Publ., 1987).

Even more recently, our supreme court has had occasion to construe the language found in § 5913. In *Commonwealth v. Scott,* 516 Pa. 346, 532 A.2d 426 (1987), the supreme court reversed this court's attempt to *broaden* the meaning in § 5913 to include violence to a non-family victim where, in the same criminal episode, a spouse or minor child had also been harmed or threatened, but no criminal proceeding had been brought on that spousal/child attempted violence. The appeal involved the husband's conviction for taking the life of a non-family member. The supreme court held that the statutory exception does not apply where the criminal proceeding is solely for violence against a victim who is neither the spouse nor within the class of protected minors.

The court stated that, the legislature having spoken on the subject, the exceptions provided could not be supplemented by judicial fiat. 516 Pa. at 351, 532 A.2d at 429. The obverse is equally true. Where the exception is spelled out in clear and unmistakable terms, that language cannot be ignored or disregarded under the pretext of pursuing the statute's spirit. *Id.,* 1 Pa.C.S. § 1921(b).

We conclude that defense counsel cannot be found ineffective for failing to object to the wife's testimony as to confidential communications, since 42 Pa.C.S. § 5913, as in effect at the time, was an express and complete exception to the spousal testimonial privilege on the facts of this case. The result is exactly the same under House Bill 570, now Act No. 16 of 1989, approved June 29, 1989.

Under Section 2 of Act 16, the act shall apply to all criminal cases pending on the effective date of the act which, under Section 3, took effect immediately upon passage. Although Act 16 converts spousal incompetency to testify into a waivable spousal privilege, the Act makes mandatory the testimony of a spouse where the defendant spouse is charged with murder, rape or involuntary deviate sexual intercourse, while continuing the lack of any privilege in matters involving bodily injury or violence to family members or minors. 42 Pa.C.S. § 5913, as now in effect, provides, in pertinent part:

### § 5913. Spouses as witnesses against each other

Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege which he or she may waive, not to testify against his or her then lawful spouse *except that there shall be no such privilege:*

(1) ....

(2) *in any criminal proceeding against either for ... violence attempted, done or threatened upon ... any minor child in their care or custody, or in the care or custody of either of them;*

(3) ....

(4) *in any criminal proceeding in which one of the charges pending against the defendant includes* murder, *involuntary deviate sexual intercourse* or rape. [emphasis added].

■ The legislature, by enacting the amendments to 42 Pa.C.S. § 5913, has made it abundantly clear that a spousal privilege simply does not exist in criminal proceedings where violence has been done or threatened upon a minor

child in the care or custody of the spouse/defendant or where the charge against the spouse is involuntary deviate sexual intercourse. Under no analysis, therefore, could it be said that an objection to the testimony of the wife based upon a spousal privilege would have had merit.

We have found no error in the manner in which Judge Cleland handled the wife's testimony regarding conversations with the marriage counselor and defense trial counsel's objection thereto. We conclude that trial counsel was not ineffective in his management of character witness testimony and that any objection to the wife's testimony concerning the communications of the husband/defendant would have been meritless.

Accordingly, we affirm the judgment of sentence.

BROSKY, J., files a concurring opinion, in which CIRILLO, President Judge, joins.

TAMILIA, J., files a concurring opinion.

BROSKY, Judge, concurring.

I concur in the majority's analysis of Issues 1 and 2. I also concur in the majority's ultimate finding that appellant is not entitled to relief pursuant to Issue 3. I write separately, however, to express my vehement disagreement with the majority's analysis of Issue 3.

The charges against appellant stem from allegations made by a ten year old girl, Kathy Youmans, who was a frequent visitor to appellant's household. According to Kathy, appellant forced her to perform oral sex upon him during a visit on Christmas, December 25, 1985, while appellant's wife was sleeping in another room. As part of the Commonwealth's case-in-chief, appellant's wife testified that appellant had told her, prior to the alleged incident, that he was desirous of adopting an older girl to complete their family, that he loved Kathy very much, and that he could only relax when Kathy was around. She further testified that her sexual relationship with appellant had been poor for several years, and that appellant had threat-

ened her in the past to leave his relationship with Kathy alone and "let him do things his way".

Appellant's trial counsel did not object to these portions of the testimony of appellant's wife. New counsel was appointed at the post-verdict stage, and trial counsel's ineffectiveness in failing to object to this testimony was raised in post-trial motions. In its opinion, the trial court stated that the communications in question had not been of a confidential nature, and, even if confidential, fell within an exception to the usual ban against disclosure of such communications, thereby depriving appellant's ineffectiveness claim of any underlying merit.

It is well settled that a convicted defendant may not prevail upon a claim of ineffective assistance of counsel unless he is able to demonstrate: (1) that the issue underlying the ineffectiveness claim is of arguable merit; and (2) that the course of action chosen by counsel had no reasonable basis, independent of hindsight, in the promotion of defendant's interests. *Commonwealth v. Brandt,* 353 Pa. Super. 250, 253, 509 A.2d 872, 874 (1986); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). Furthermore, assuming the defendant is able to meet this two-pronged test, he must then be able to demonstrate that the claimed ineffectiveness so prejudiced his defense that he did not receive a fair trial. *Commonwealth v. Pierce,* 345 Pa.Super. 324, 498 A.2d 423 (1985), aff'd 515 Pa. 153, 527 A.2d 973 (1987).

With respect to the underlying merit of appellant's claim, the relevant statutory authority pertaining to the competency of spouses to testify is found at 42 Pa.C.S. § 5913 and § 5914, which state the following:

§ 5913. Spouses as witnesses against each other

Except as otherwise provided in this subchapter, in a criminal proceeding husband and wife shall not be competent or permitted to testify against each other, except that in proceedings for desertion and maintenance, and in *any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the*

*other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them, each shall be a competent witness against the other,* and except also that either of them shall be competent merely to prove the fact of marriage in support of a criminal charge of bigamy alleged to have been committed by or with the other.

\* \* \* \* \* \*

§ 5914. Confidential communications between spouses. Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify *to confidential communications made by one to the other,* unless this privilege is waived upon the trial.

(Emphasis supplied.)

In its opinion denying appellant's ineffectiveness claim, the trial court held that: (1) the communications involved had not been confidential within the meaning of § 5914, and (2) in the alternative, even if confidential, the communications had been divulged as testimony in a criminal proceeding against appellant for "violence" to a minor in his custody, under the § 5913 exception to spousal incompetency. On the basis of this holding, the trial court found, as does the majority now, no underlying merit to appellant's ineffectiveness claim. I disagree with that finding.

In *Commonwealth v. Rough,* 275 Pa.Super. 50, 418 A.2d 605 (1980), the defendant was charged with rape and corruption of the morals of his minor stepdaughter. At trial, the defendant's wife testified to the contents of a telephone conversation in which the defendant had blamed his wife for his sexual assault of the minor victim. In its analysis of the nature of the applicable privilege, our Court stated the following:

The applicable privilege [6] governing testimony by one spouse against another concerns confidential communications made during a marriage....

---

[6] There is no dispute that the absolute prohibition preventing one spouse from testifying against the other during coverture, ..., is

> inapplicable due to an exception within the statute permitting testimony in proceedings involving violence against the minor child of either. *Competency under this exception does not abrogate the general privilege concerning confidential communications made during marriage.*

*Rough,* supra, at p. 612. (Emphasis supplied.)

While I do not dispute the finding that the "violence" exception to § 5913 removed the incompetency of appellant's wife to give testimony, see *Commonwealth v. Nadolny,* 163 Pa.Super. 517, 63 A.2d 129, 130 (1949) ("violence" exception includes "physical defilement"), I take issue with the trial court's, and the majority's, view of the interrelationship between § 5913 and § 5914. The above footnote from *Rough* makes it patently clear that the removal of testimonial incompetency under the "violence" exception to § 5913, does not remove the incompetency barring a spouse from divulging the contents of confidential communications on the witness stand.

The majority finds any reliance upon the above language from *Rough* to be misplaced, and rejects the above analysis based upon the following beliefs: 1) the *Rough* footnote is both dicta, and a mere commentary that, when the "violence" exception is not involved, the general confidentiality privilege remains undisturbed; 2) such a reading of § 5913 and § 5914 flies in the face of the rules of statutory construction, defying the common sense meaning of the language therein; and 3) the above analysis *sub silentio* contravenes *Nadolny,* which is squarely on point and should be followed as the law. I shall address the majority's concerns seriatim.

With respect to the precedential effect of the *Rough* footnote, the majority maintains, as a starting point, that, as the applicability of § 5914, and not § 5913, formed the basis of appellant's claim, the reference to § 5913 was dicta, and in any event, consistent with the majority analysis.

On the contrary, I find the reference to have been part of a logical progression in the Superior Court's competency analysis, as well as completely contradictory to the majority's reading of the interplay between these two statutes.

If the majority's position is correct, and the § 5913 "violence" exception to incompetency automatically dissolves all spousal incompetency, including the incompetency to testify to confidential communications, our Court would not have been required to resolve whether § 5914 applied to the conversation in question. An appellate court may, and should, affirm the trial court where correct on any ground, see *Butler v. DeLuca*, 329 Pa.Super. 383, 478 A.2d. 840, 843 (1984). Thus, a finding that the § 5913 "violence" exception had already made the testimony admissible regardless of confidentiality, would have obviated the need for further discussion. It was because of their finding that § 5913 had not opened the door to all testimony, that our Court was required to scrutinize the content and circumstances of the conversation.[1]

Moreover, *Rough*'s interpretation of the interplay between § 5913 and § 5914 is not consistent with the majority's analysis herein. *Rough* could not have been any clearer than in its statement "(C)ompetency under this exception does not abrogate the general privilege concerning confidential communications made during the marriage....". To read this statement as does the majority, i.e. that the confidentiality privilege still exists where the exception does not apply, would appear rather facile: as § 5914 remains on the books, it is patently obvious that the confidentiality privilege remains viable in some context.

The key to the meaning of this statement is to be found in the first sentence of the footnote: "(T)here is no dispute *that the absolute prohibition preventing one's spouse from testifying against the other* during coverture, ..., is inapplicable due to an exception ...". (Emphasis supplied.)

The privilege of spousal immunity involves two separate, but related, forms of immunity. There is the "absolute

---

1. If any portion of the *Rough* opinion could be classed as dicta, it is that portion which the majority herein finds to be the holding of *Rough*: the discussion on whether admission of the conversation, even if erroneous, would have been harmless error. Once the Court had found the conversation admissible, it should not have proceeded to consider the question of harmless error.

privilege" which bars any testimony whatsoever on the part of the defendant's spouse, now codified at § 5913. Apart from this "absolute privilege", there is the related but independent prohibition against disclosure on the stand by the defendant's spouse of confidential communications, as codified at § 5914.

Where I believe the majority has gone astray is in giving an overly narrow reading to what it means, for purposes of § 5913, to testify against one's spouse.

The majority fails to recognize what is implicitly recognized in *Rough:* the content of a spouse's testimony needn't consist purely of the disclosure of words and actions revealed only in the confidence of the marital relationship. It is entirely conceivable that a defendant's spouse would be in a position to testify to purely objective observations, or statements openly made in the presence of third parties, as would any other witness. The "absolute privilege" of § 5913 would bar the spouse from giving testimony to such observations and statements, despite the fact that they were not discovered in any confidential marital setting, or through any confidential communication, based on the legislative assumption that it is undesirable to permit spouses to give any testimony whatsoever against each other. The "violence" exception is the legislature's recognition that, where violence has been visited upon a minor, the policy favoring the preservation of the marital relationship should give way to protection of the minor, and permitting testimony by the defendant's spouse to objective observations and openly spoken words is but a minor intrusion upon that relationship.

Under § 5914, however, the legislature has recognized a limitation upon the degree of intrusion that is desirable. They have recognized an independent prohibition against the disclosure by a spouse, otherwise qualified to testify by removal of the bar of § 5913, of those words and actions revealed in the confidence and trust one naturally imposes in one's spouse.

§ 5914, unlike § 5913, does not contain a "violence" exception. Despite the majority's strained attempts to read the exception of § 5913 into § 5914, the logical import of this legislative omission is obvious. While the "violence" exception of § 5913 allows the defendant's spouse to take the stand, the door is not meant to be thrown open to allow any and all testimony: the bar against disclosure of private behavior and discussions is intended to remain.

It has been held that, while the general bar of spousal incompetency set forth in § 5913 is extinguished upon death or divorce, the bar against a spouse divulging § 5914 confidential communications remains intact after death or divorce. See *Commonwealth v. Clark*, 347 Pa.Super. 128, 500 A.2d 440, 441, 442 n. 1 (1985); *Commonwealth v. Peluso*, 240 Pa.Super. 330, 361 A.2d. 852, 856 (1976), rev'd on other grounds 481 Pa. 641, 393 A.2d 344 (1978); *Hunter v. Hunter*, 169 Pa.Super. 498, 83 A.2d 401, 403 (1951). This, clearly, is in recognition of the legislature's express limitation upon the amount of intrusion into the marital relationship that is to be tolerated: the legislature has recognized, simply put, that some things should never be disclosed, even after the marital relationship has ceased to exist, without the consent of the party who has entrusted his husband or wife with his or her secrets.

If the total removal of § 5913 incompetency by death or divorce does not open the door to the disclosure of § 5914 confidential communications, it is illogical and inconsistent to interpret the removal of § 5913 incompetency under the "violence" exception as abrogating the confidentiality privilege. This is precisely why our Court in *Rough* was obligated, once it found that the "absolute privilege" of § 5913 had been removed by the "violence" exception, to determine if the testimony admitted had permitted the defendant's spouse to betray the trust inherent in the marital setting.

Moving, then, to the second of the majority's concerns, it could be said that the above discussion alone demonstrates why it neither contravenes legislative intent, nor yields an "absurd" result, to read § 5913 and § 5914 in the fashion I

now suggest. The majority, however, believes this reading ignores the "(E)xcept as otherwise provided in this subchapter" prefacing clause to § 5914, which, it insists, must refer to the exceptions to incompetency listed in § 5913.

This view, however, ignores the significance of the legislature's inclusion of § 5915 in the relevant subchapter, which provides as follows:

§ 5915. Testimony by spouse in rebuttal

In any criminal proceeding brought against the husband or wife, if the defendant makes defense at the trial upon any ground which attacks the character or conduct of his or her spouse, the spouse attacked shall be a competent witness in rebuttal for the Commonwealth.

This provision, apparently, removes the bar of incompetency under either § 5913 (which contains the same "(E)xcept as otherwise provided in this subchapter" clause) or § 5914, where applicable. Unlike the majority, I fail to see why the preface to § 5914 must be read as referring to both § 5913 and § 5915. I believe it rather obvious that the preface as stated in both § 5913 and § 5914, was intended to permit the defendant's spouse to defend himself or herself against the defendant's slurs. As with the balancing of interests engaged in by the legislature in formulating § 5913 and § 5914, it is clear that the legislature determined that the usual policies favoring marital relations should give way when the defendant has seen fit to waive the protections of marriage, and impune the character and conduct of his or her spouse.

Finally, I would dispute the majority's conclusion that the above analysis, in effect, contravenes *Nadolny*. While it is likely that Nadolny's admission of guilt to his wife was made in a confidential setting (although the facts as given do not give the circumstances of their conversation), there is no indication that Nadolny ever raised the bar of confidentiality in his arguments either in the lower court or on appeal. While an appellate court is free to affirm the trial court on a correct rationale *sua sponte, Butler,* supra., it may not reverse upon an issue not raised by appellant, and

therefore is precluded from considering potential grounds for reversal *sua sponte.* Pa.R.A.P. 302, 2116(a). Only issues of appealability or jurisdiction may be considered *sua sponte.* See *Richards v. Trimbur,* 374 Pa.Super. 352, 358, 543 A.2d. 116, 118 (1988).

In light of the foregoing, I cannot and do not concur in the majority's laudable but misguided attempt to secure what may be desirable testimony in criminal cases involving violence-ridden domestic situations, through a patent misreading of the interrelationship between § 5913 and § 5914.

I would thus proceed in my analysis to a determination as to whether the involved communications were confidential.

Upon review of the content and circumstances of the communications, I do not agree with the trial court finding that the statements pertaining to Kathy were not intended to be confidential. While appellant's desire to adopt an older child was not a secret, it cannot be averred that statements pertaining to his inability to relax in Kathy's absence, and his threats to his wife warning her not to interfere in his relationship with Kathy, were not made in the confidence of the marriage. Such statements permit an inference that appellant's relationship with Kathy had abnormal overtones, and in all likelihood would not have been made but for the trust and confidence that the marital relationship inspires. *Rough,* supra, 418 A.2d at pp. 612–13.

Furthermore, I do not find confidential intent lacking on the basis of appellant's willingness to testify to these statements at trial, as did the trial court. Following the testimony of appellant's wife, appellant was placed in the position of having to negate the inferences created by her testimony, and naturally wished to put the statements in a more favorable light. Had appellant's trial counsel raised objection to the wife's testimony, appellant would not have been compelled to address the divulged statements.

Hence, I find arguable merit to appellant's ineffectiveness claim.

However, as stated above, we may affirm the trial court if correct on any ground. *Butler,* supra. I would do so, as I cannot say that trial counsel could not have had a reasonable basis for his failure to object.

Part of appellant's theory of defense was that the charges had resulted from his wife's jealousy of his relationship with Kathy, and from her bitterness in connection with their impending divorce. Hence, it is possible that trial counsel had merely wished to discredit the charges by permitting the challenged testimony, and then by introducing appellant's own testimony pertaining to these statements, in which appellant spoke at length about his wife's irrational jealousy and mischaracterization of what was, in appellant's eyes, a normal father-daughter relationship. While this trial strategy was a gamble, the test is not whether *more* reasonable trial strategies were available, but rather, whether trial counsel had *some* reasonable basis for the strategy chosen. *Maroney,* supra, 235 A.2d at p. 352.

Trial counsel offered no explanation for his chosen strategy at the post-verdict evidentiary hearing. However, post-verdict (now appellate) counsel deliberately chose not to interrogate trial counsel upon this point, and elected to present the testimony of appellant only, pertaining to trial counsel's failure to call various character witnesses. With respect to the strategy behind trial counsel's failure to object to Mrs. Hancharik's testimony, post-verdict counsel agreed to "waive any argument other than what's in the memorandum" in support of post-verdict motions. (Post–Verdict Hearing Transcript, p. 2.) As such, appellant has chosen to rely upon the record to support his current ineffectiveness claim.

Moreover, it is well settled that this Court may find counsel's actions effective if *any* reasonable basis for those actions exists. *Commonwealth v. Osborn,* 364 Pa.Super. 505, 520, 528 A.2d 623, 630 (1987). Hence, where the record before us is sufficient to determine that there exists a *plausible* basis for counsel's strategy, and that basis is not

inherently unreasonable, there is no requirement that the *actual* reason for counsel's actions be determined at an evidentiary hearing. *Commonwealth v. Marsh*, 460 Pa. 253, 333 A.2d 181, 183 (1975). I believe the record below is sufficient for this Court to make such a determination.

As I cannot deem the apparent chosen strategy inherently unreasonable, I would find that appellant has failed to satisfy the second prong for demonstrating ineffectiveness.

It is for this reason that I concur in the majority's ultimate refusal to grant appellant relief pursuant to Issue 3, and would affirm the judgment of sentence.

TAMILIA, Judge, concurring:

I agree with the majority that the testimonial privilege announced by the legislature at 42 Pa.C.S. § 5914, providing that a spouse is not competent to testify against his/her wife or husband, is qualified by section 5913 which abolishes the privileges in family matters including situations involving violence or attempted violence against a spouse or children in the care or custody of either of them. To hold otherwise would be to shift the intent of section 5913 and to create an in-road in that section, which was never intended by the legislature.

The thrust of section 5913 must be measured against the evolution in the law concerning interspousal and interfamilial immunities, both testimonial and in regard to confidential communications, particularly within the past twenty-five years. The immunity or privilege derived from the common law concept of "oneness", the sanctity of marriage and the preservation of confidential and private relationships. Statutory law has been codified in most jurisdictions to deal with modern realities and the recognition that the common law privileges and immunities become a shield to protect wrong doers and to legally coerce the spouse (usually a wife) and children into submission by tyrannical, abusive and dangerous spouses. Early examples of relief granted by the legislature are 48 P.S. § 131 Right of action; jurisdiction; spouses competent witnesses (Act of May 23, 1907,

P.L. 227 § 1) (deserted wife shall be competent to be a witness against her husband to obtain support and maintenance); 48 P.S. § 91, mother to have same power and control over minor child as father; right of action for injuries to child (Act of June 26, 1895, P.L. 316 § 1) (each party in habeas corpus action claiming child is on equal footing and right to be heard). *Commonwealth ex rel. Horisk v. Horisk,* 90 Pa.Super. 400 (1927). In more recent times, the *Protection from Abuse Act,* 35 P.S. 10181 *et seq.,* permits action between family members regarding physical or sexual abuse, and by an adult household member or parent on behalf of a child; the *Child Protective Service Law,* 11 P.S. 2201 *et seq.,* provides at section 2222 Hearings and Evidence, "(2) . . . any privilege of confidential communication between husband and wife . . ., shall not constitute a ground for excluding evidence at any proceeding regarding child abuse or the cause thereof. The neutering of these immunities and privileges has also spread into the tort field, from domestic relations and criminal law exceptions, to provide that interspousal immunity for tort actions between spouses be abolished." *See Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981), and between parent and child, *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971). The final bulwark of interspousal immunity was the bedroom and the common law protection of the spouse (male) from a charge of spousal rape. Under Lord Hale's [1] contract theory, common law may be stated, "but a husband cannot be guilty of a rape committed by himself upon his lawful wife, for by their mutual matrimonial consent and contract the wife hath given up herself in this kind unto her husband which she cannot retreat." One of the rationales for this concept was that since the wife was chattel and her husband's property, rape was nothing more than a man making use of his own property. The question posed to contemporary legal scholars and courts is, "When a woman says I do, does

---

**1.** 1 Hale P.C. 629. Hale was Chief Justice of the Court of Kings Bench from 1671 until 1675. Cited in *Warren v. State,* 255 Ga. 151, 336 S.E.2d 221 (1985).

she give up her right to say I won't?"[2] Pennsylvania has moved into the forefront of those states which has demystified the common law mantel of immunities and accorded the spouse (wife) the equal protection of the law afforded by federal and state constitutions. In 1985, the legislature enacted a law making it a crime for a person to commit a sexual assault or to inflict involuntary deviate sexual intercourse upon a spouse. 18 Pa.C.S.A. § 3201. This Court declared the statutory intent to further a compelling state interest in protecting the fundamental right of each individual to control the integrity of his or her own body and, as such, does not clearly and palpably violate a spouse's right to privacy. *Commonwealth v. Shoemaker*, 359 Pa.Super. 111, 518 A.2d 591 (1986), appeal denied 515 Pa. 605, 529 A.2d 1080 (1987). Carrying this movement to its most forward point, the legislature, by Act No. 1989–16, effective June 29, 1989, made the testimonial privilege waivable on the part of the witness in a criminal proceeding and eliminated it entirely in desertion and maintenance cases, criminal proceedings involving bodily injury or attempted or threatened violence against the spouse or their minor children or children in their care, and in criminal cases charging murder, involuntary deviate sexual intercourse or rape.

From the above, it is clear that there is a steady and determined response to interspousal and interfamilial violence which was previously condoned at common law under the rubric of the privacy and sanctity of the family in which the state has no power to intervene.

The trend through state and federal rules and case law is toward divesting the accused of the privilege to bar adverse spousal testimony. In 1958, thirty-one jurisdictions including Alaska and Hawaii then allowed an accused a privilege to prevent adverse spousal testimony. By 1980, the number had declined to 24. The federal courts, like Pennsylvania to some degree, have determined that the basis for the rule should be modified so that the witness spouse alone has a

---

2. Griffin, In 44 States, It's Legal to Rape Your Wife, 21 Student Lawyer.

privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying. *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). The note at 93 ALR 3d 1005–1018, Competency of Spouse to Testify Against Other in Prosecution for Offense Against Child or Both or Either, covers the multitude of positions taken on this issue.

Under the strict common-law rule of incompetency, one spouse could not testify against the other, regardless of the offense charged, including a sex offense against the defendant's stepdaughter. But an exception to the common-law rule was developed for prosecutions involving a crime against the person of the witness spouse, and it has been held that the exception would extend to prosecutions involving violent crimes and sex offenses against the child of either spouse.... *Similarly, under statutes providing an express exception for prosecutions involving an offense against the child, the courts have held that the defendant's spouse would be competent to testify.*

*Id.* at 1024, note 2(a) (footnotes omitted) (emphasis added).

It is, therefore, clearly evident that the only sensible and consistent position for this Court to take in resolving a possible conflict between section 5913 and section 5914 is to hold that the exception made regarding spousal testimony for offenses against a child in the home is not limited by section 5914 having to do with confidential communications between spouses. Finally, it is clear the legislature could not have intended the absurd result that it is permissible for a parent to testify against the other spouse in a case under the P.F.A., or the Child Protection Law, where the issue had to do with abuse or sexual assault against the child but not in a case of rape or sexual assault charged against the father. *Commonwealth v. Nadolny,* 163 Pa.Super. 517, 63 A.2d 129 (1949).

The testimony presented by wife was admissible and I agree with the majority that the judgment of sentence must be affirmed.