J-S63035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| KNOWLEDGE BROWN | |
| Appellant | No. 3338 EDA 2015 |

Appeal from the PCRA Order October 19, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0003358-2008

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, J., and FITZGERALD,[*] J.

JUDGMENT ORDER BY FITZGERALD, J.:  **FILED SEPTEMBER 27, 2016**

Appellant, Knowledge Brown, appeals from the order entered in the Philadelphia County Court of Common Pleas denying, after an evidentiary hearing, his Post Conviction Relief Act[1] ("PCRA") petition.  We affirm.

We adopt the facts and procedural history set forth in the PCRA court's opinion.  **See** PCRA Ct. Op., 10/19/15, at 1-5.[2]  Appellant raises the following issues on appeal:

> 1. Did not the lower court err in dismissing the [PCRA p]etition, as the factual basis for its conclusion is not supported by the record and because trial counsel, in a case where identification evidence was the sole basis for conviction, failed to use powerful impeachment evidence to

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] We note the jury trial commenced on May 5, 2009, not May 4th as indicated by the PCRA court.

contradict the critical prosecution eyewitness and failed to secure a cautionary instruction?

2. Is not [A]ppellant entitled to relief under a "cumulative error" standard?

Appellant's Brief at 6.[3]  Appellant contends trial counsel was ineffective for failing to use impeachment evidence to contradict the prosecution eyewitness, Renea Moore, or secure a cautionary instruction.  He claims he was entitled to relief based upon these cumulative errors.

This Court has stated:

> Our standard and scope of review for the denial of a PCRA petition is well-settled.
>
> [A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error.  The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

**Commonwealth v. Charleston**, 94 A.3d 1012, 1018-19 (Pa. Super. 2014) (some citations omitted).

After careful review of the record, the parties' briefs, and the decision by the Honorable Barbara A. McDermott, we affirm on the basis of the PCRA

---

[3] We note that in the amended PCRA petition, Appellant raised several issues that have been abandoned on appeal.  **See** Am. Counseled Pet. for Post Conviction Relief, 10/16/14, at 1-2 (unpaginated).

court's opinion. **See** PCRA Ct. Op. at 5-10[4] (holding (1) trial counsel challenged the reliability of Moore's identification of Appellant before and during trial[5] and (2) a cautionary eyewitness instruction was inappropriate where the record indicates Moore clearly viewed Appellant at the time of the shooting).

Given our resolution of the first issue raised on appeal, we need not address the issue of whether Appellant is entitled to relief under a "cumulative error" standard. **See Commonwealth v. Washington**, 927 A.2d 586, 617 (Pa. 2007) (holding "no number of failed claims may collectively warrant relief if they fail to do so individually").

Accordingly, we affirm the order of the PCRA court.

Order affirmed.

---

[4] We note the citation to page sixty-one of the April 30, 2009 notes of testimony is inaccurate. The quoted statement appears on page sixty-three. **See** PCRA Ct. Op. at 9 n.9. On page ten of the PCRA court's opinion, the court refers to Moore's observation of Appellant and victim arguing, citing pages 121-22. This testimony appears in the notes of testimony on pages 111-12. **See** N.T., 5/5/09, at 111-12.

[5] On direct appeal, this Court opined: "Based upon all of the evidence presented, we conclude that the trial court correctly determined that Moore had an independent basis for identifying [Appellant], and that her identification of [him] was therefore reliable." **Commonwealth v. Brown**, 2424 EDA 2009 at 10 (Pa. Super. July 8, 2011) (unpublished memorandum).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2016

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA    : CP-51-CR-0003358-2008

:

:

v.    CP-51-CR-0003358-2008 Comm. v. Brown, Knowledge
Opinion and Order



KNOWLEDGE BROWN

7358214931

:

**FILED**

**OCT 19 2015**

**Criminal Appeals Unit**
**First Judicial District of PA**

<u>**OPINION AND ORDER**</u>

**McDermott, J.**                                              **October 19, 2015**

<u>**Procedural History**</u>

On May 30, 2007, the Petitioner, Knowledge Brown, was arrested and charged with

Murder, Possession of a Firearm Prohibited, Firearms Not to be Carried Without a License,

Carrying Firearms on Public Streets in Philadelphia, Possession of an Instrument of Crime

("PIC"), and Recklessly Endangering Another Person ("REAP").

On May 4, 2009, the Petitioner was tried by a jury before the Honorable Renee Cardwell

Hughes. On May 8, 2009, the jury returned a verdict of guilty to First-Degree Murder, Firearms

Not to be Carried Without a License, Carrying Firearms on Public Streets in Philadelphia, and

PIC.[1] This same date, the trial court sentenced Petitioner to life imprisonment without the

possibility of parole for First-Degree Murder, and concurrent terms of three and a half to seven

years for Firearms Not to be Carried Without a License, two and a half to five years for

Carrying Firearms on Public Streets in Philadelphia, and two and a half to five years for PIC.

On May 18, 2009, the Petitioner filed a Post-Sentence Motion. On May 26, trial counsel,

Christopher Evarts, withdrew as counsel. On May 29, 2009, Anthony Arrigo, Esquire was

---

[1] All other charges were *nolle prossed.*

appointed. On June 10, 2009, Petitioner was given an extension to file Post-Sentence Motions. On July 15, 2009, counsel filed a Supplemental Post-Sentence Motion, which the trial court denied on July 20, 2009.

On August 19, 2009, counsel filed a Notice of Appeal. After being ordered to submit a Statement of Matters Complained of on Appeal pursuant Pa.R.A.P. 1925(b), Petitioner filed a Concise Statement of Matters Complained of on Appeal on September 21, 2009. On October 5, 2009, the trial court filed its Opinion. Because trial counsel failed to file a brief in Superior Court, the appeal was dismissed.

On June 11, 2010, Thomas McGill, Esquire was appointed as appellant counsel. On August 4, 2010, in response to Petitioner's "Application to Vacate Briefing Order and for Remand to Trial Court with Leave to File Supplement Concise Statement," the Superior Court remanded and ordered the trial court to issue a new 1925(b) Order to allow appellant counsel to file a Supplemental Concise Statement. On August 9, 2010, Petitioner filed a Supplemental Concise Statement of Matters Complained of on Appeal.[2] On July 8, 2011, the Superior Court affirmed the Petitioner's judgment of sentence. On January 4, 2012, the Supreme Court denied the Petitioner's Petition for Allowance of Appeal.

On February 17, 2012, the Petitioner filed a timely *pro se* Post-Conviction Relief Act ("PCRA") Petition. On June 18, 2012, Earl Kaufman, Esquire was appointed as counsel. On September 17, 2014, private counsel, Susan Lin, Esquire and Jules Epstein, Esquire entered their entries of appearance. On October 16, 2014, Lin and Epstein filed an Amended Petition on Petitioner's behalf. On April 30, 2015, the Commonwealth filed a Motion to Dismiss the PCRA

---

[2] Petitioner claimed he was entitled to a new trial on four issues: (1) insufficient evidence; (2) the trial court's denial of pretrial motion to suppress identification; (3) the trial court's ruling that the Commonwealth could cross-examine character witnesses regarding the Petitioner's Disorderly Conduct conviction; and (4) that he was improperly denied a jury instruction for a witness who was on probation.

2

Petition. After this matter was assigned to this Court, this Court held its first status listing on July 9, 2015, in which the Commonwealth agreed to an evidentiary hearing on one of the issues raised in the Amended PCRA Petition.[3] This same date, PCRA counsel filed an Amended Supplemental Petition and a Brief in Opposition of the Commonwealth's Motion to Dismiss. On July 30, 2015, this Court granted an evidentiary hearing on four of the eight issues raised in the Petitioner's Amended Petition. The hearing was held on August 24, 2015.

## Facts

The facts, summarized by the Superior Court in its July 8, 2011 Opinion, are as follows:

> On February 15, 2007, Jamal Richards ("the victim") was shot twice and killed while inside of a grocery store located at 2630 Dickenson Street in Philadelphia. Shortly after the shooting occurred, the police received several anonymous tips indicating, "Knowledge did it."
>
> Renea Moore ("Moore") was present in the store at the time of the shooting and gave a statement to police. She told police that she observed [Petitioner] and the victim engaged in an argument, and saw the victim push [Petitioner] away and say, "go ahead." Moore then saw [Petitioner] shoot the victim twice and run out of the store. Moore stated that she had known [Petitioner] for two-to-three years prior to the shooting from seeing him every day in the neighborhood heading to the basketball courts. Furthermore, she indicated that [Petitioner] had attempted to rob the father of one of her children approximately six-to-seven months prior to the shooting. The police presented her with a single photograph of [Petitioner], and she readily identified him by name.
>
> Acquil Raheem ("Raheem") was also present in the grocery store when the victim was shot. When speaking to police, Raheem indicated that he had seen [Petitioner], whom he knew as "Na" around the neighborhood, and that [the Petitioner] was the one who shot the victim. The police presented Raheem with a photo array, and he selected [Petitioner] as the shooter.
>
> The police recovered a discarded gun from an area near the grocery store. Testing revealed that it was the gun that was used to shoot the victim. Police conducted DNA and fingerprint analysis on the weapon, but this proved to be unsuccessful.

---

[3] The Commonwealth agreed to a hearing on the issue of whether trial counsel was ineffective for failing to introduce evidence that the eyewitness was shown another suspect and said that she was "unsure" if he was the shooter.

3

A warrant for [Petitioner's] arrest was issued on February 16, 2007. [Petitioner] turned himself into police on May 31, 2007. On August 1, 2008, [Petitioner] filed a *pro se* motion to suppress identification evidence, arguing that the single photograph identification procedure utilized with Moore was unduly suggestive. A hearing on the motion was held on April 30, 2009, at which time Detective Joseph Centeno testified that he did not provide Moore with a photo[graphic] array because she knew [Petitioner] prior to and independent of the shooting. Moore also testified at the suppression hearing, and provided the same information contained in the statement she provided to police. She further testified that prior to being shown the single [photograph] of [Petitioner], she viewed a photo[graphic] array on a computer screen, which consisted of rows of men's faces, and that she selected [Petitioner] from that group. The trial court denied the motion [to suppress], finding that "Moore clearly had independent basis for indentifying [ ] [Petitioner]."

. . .

At trial, Moore once again testified in line with her statement to police and with her prior testimony at the suppression hearing. Raheem, on the other hand, recanted entirely, denying even that his signature appeared on his police statement. The Commonwealth impeached Raheem's testimony using his statement to police and his prior testimony at the preliminary hearing.

[Petitioner] presented several witnesses in his defense. The first was his sister, Ameena Ruff ("[Petitioner]'s sister"), who testified that [Petitioner] was with her at home on the day in question. On cross-examination, however, it became clear that [Petitioner]'s sister did not know on what day the shooting occurred. Furthermore, she had given a statement to police indicating that she could not be sure that [Petitioner] was with her on the day of the shooting. She testified that she is very ill, and takes medication that adversely affects her memory.

[Petitioner] testified in his own behalf, corroborating his sister's testimony that he was at her home on the day in question taking care of her. He denied being present at the grocery store at the time of the shooting, denied that he knew the victim, and denied that he ever attempted to rob the father of Moore's children.

[Petitioner] also called his mother, Joyce Ruff ("[Petitioner]'s mother"), who testified regarding his reputation in the community as a peaceful citizen. On cross-examination, over defense counsel's objection, the Commonwealth questioned her about [Petitioner]'s prior conviction for disorderly conduct. Although she testified she was unaware [that Petitioner] was convicted of the

> crime, she stated it did not change her opinion about [Petitioner]'s reputation for "not being a disruptive person in the neighborhood."

*Commonwealth v. Knowledge Brown*, 2424 EDA 2009 (Pa. Super. July 8, 2011) (non-precedential decision) (internal citations omitted).

At the August 24, 2015 hearing, Petitioner presented one live witness, his mother, Joyce Ruff, who testified about her conversations with trial counsel regarding character witnesses. The Commonwealth stipulated to the affidavits of six character witnesses. Trial counsel also testified and explained his trial strategy.

## Issues

As a preliminary matter, this Court must address the timeliness of this Petition. A PCRA petition must be filed no more than a year after the judgment becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment is final for purposes of the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). The PCRA's time limit is jurisdictional, meaning untimely petitions may not be addressed even if couched in terms of ineffectiveness. *Commonwealth v. Yarris*, 731 A.2d 581, 586 (Pa. 1999). On July 8, 2011, the Superior Court affirmed the Petitioner's judgment of sentence. On January 4, 2012, the Supreme Court denied the Petitioner's Petition for Allowance of Appeal. Since Petitioner's judgment of sentence became final on January 4, 2012, his February 17, 2012 Petition is timely. *See* 42 Pa.C.S. § 9545(b)(1).

Petitioner raises eight issues. Petitioner claims that the trial counsel was ineffective by failing to challenge the identification of the Petitioner as the shooter. Specifically, Petitioner alleges: (1) that trial counsel failed to utilize a description contained in a Crime Scene Log that

5

the shooter wore a "black mask";[4] (2) that trial counsel failed to introduce evidence that an eyewitness was shown a different suspect than Petitioner at a "show-up" in which she said she was "unsure" if he was the shooter;[5] (3) that trial counsel failed to use the testimony of Moore who said that she only knew the victim from the neighborhood, rather than saying that she knew both victim and the perpetrator, as she would later allege; and (4) that trial counsel failed to request a cautionary eyewitness (*Kloiber*) instruction.

Petitioner also challenges trial counsel's failure to object to erroneous rulings by the trial court. Petitioner alleges trial counsel was ineffective for failing to object to the trial court's jury instruction that Petitioner's Disorderly Conduct conviction could be used to judge his credibility and the trial court's ruling that he could not ask a witness (Moore) if she was on probation at the time of the subject crime as her probationary status was relevant to assess bias and credibility.

Lastly, Petitioner challenges trial counsel's lack of investigation of and the handling of character witnesses. Petitioner claims that trial counsel was ineffective for failing to properly investigate the availability and present non-family character witnesses and to object to the trial court's ruling that Petitioner's character witnesses could be cross-examined regarding their criminal records when some had no record and other had no *crimen falsi* convictions.[6]

To obtain relief based on a claim of ineffective assistance of counsel, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is strongly presumed, however, to have rendered effective assistance and made all

---

[4] This Court granted an evidentiary hearing on this issue.

[5] The Commonwealth agreed to an evidentiary hearing on this issue.

[6] This Court granted an evidentiary hearing on both of the issues related to character witnesses.

significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. 668 (1984); *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013).

To overcome this strong presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test applies by looking to three elements—whether: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, i.e., that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195–96 (Pa. 2012) (*citing Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). Failure to satisfy any prong of this test for ineffectiveness will require rejection of the claim. *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. Super. 2003). If a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *Bennett*, 57 A.3d at 1196. For a claim of ineffectiveness, the burden of production and persuasion remain with the petitioner at an evidentiary hearing. *Commonwealth v. Wells*, 578 A.2d 27 (Pa. Super. 1990). If the petitioner fails to sustain the offer of proof at the evidentiary hearing, the ineffectiveness claim must fail. *Id.*

### Failure to Challenge the Identification of the Petitioner

Petitioner claims that trial counsel was ineffective by failing to utilize a description contained in a Crime Scene Log that the shooter wore a "black mask" and that trial counsel failed to introduce evidence that an eyewitness was shown a different suspect than Petitioner in which the eyewitness informed police that she was "unsure" if he was the shooter.[7] Petitioner

---

[7] In Officer Kevin Corcoran's statement to detectives, he stated that after he handcuffed a suspect (Mr. Curtis) following the subject shooting, a "witness c[a]me around to see if they [sic] could identify [Mr. Curtis] as the shooter. The witness stated that they [sic] were unsure." (Investigative Interview Record—Petitioner's Evidentiary Hearing Exhibit "P-3").

7

maintains that both of these statements were said by Moore and alleges he was prejudiced by trial counsel's failure to use these statements as they would have provided him with evidence to impeach her.

This Court agrees with Petitioner that had these statements been attributed to Moore, they should have been used by trial counsel for impeachment purposes. Nothing in the record, however, allows this Court to conclude that Moore made these statements. Moore did not testify at the evidentiary hearing. Although the evidence suggests that Moore was taken to a post-incident "show-up,"[8] this Court cannot conclude that it was Moore who articulated the word "unsure" following that "show-up." This conclusion would be incongruent to the record as Moore was consistent—on the day of the shooting, at the preliminary hearing, at the suppression hearing, and at trial—in identifying the Petitioner as the shooter. The only evidence of this statement was a police memorandum taken after the "show up," which differed from a radio transmission. During his radio transmission following the "show up," Officer Corcoran said that the witness's identification was "negative," not "unsure." (Police Radio Transcript—Commonwealth's Evidentiary Hearing Exhibit "C-1").

This Court also cannot conclude that Moore made the "black mask" statement. Nowhere in the record does Moore indicate that the suspect wore a black mask. The record is devoid of any evidence on who made the statement. Petitioner has therefore failed to meet his burden as he fails to show who made these statements and how these statements would have been used at trial. *Wells*, 578 A.2d 27; *see also Strickland, supra.* Petitioner's claims, therefore, must be denied.

Petitioner asserts that trial counsel was ineffective for failing to use Police Officer Patrick Cavalieri's statement to homicide detectives that Moore "only stated that she knew the male who

---

[8] At trial, in a sidebar discussion on the record between the court and counsel, the Commonwealth confirmed that Moore was the only person involved in a post-incident identification. N.T. 5/07/2009 at 122.

8

had been shot from the neighborhood," rather than saying that she knew the victim and the perpetrator. While this Court acknowledges that this statement could have been used to attack Moore's credibility at trial, this statement would have been cumulative to the attacks by trial counsel on Moore's identification of Petitioner. *See Commonwealth v. Spotz*, 47 A.3d 63 (Pa. 2002) (counsel is not ineffective for failing to present cumulative evidence).

Trial counsel challenged the circumstances and the reliability of Moore's identification of the Petitioner before and during trial. Before trial began, trial counsel litigateda Motion to Suppress the Identification.[9] At trial, he challenged Moore's identification when he questioned Moore on why she failed to mention the Petitioner's identity at the crime scene. N.T. 5/05/2009 at 134–35. Trial counsel questioned Moore on her prior interactions with the Petitioner. *Id.* at 144–45. Trial counsel also questioned Moore on the number of photographs that were shown to her by detectives. *Id.* at 161–62. For these reasons, this claim is denied.

Petitioner asserts that trial counsel was ineffective because he failed to request a cautionary eyewitness (*Kloiber*) instruction.[10] This Court finds that this claim lacks merit as a

---

[9] After hearing testimony at the suppression hearing, Judge Hughes found that showing Moore a single photograph was not unduly suggestive because "clearly [Moore] had an independent basis for identifying [the Petitioner]." N.T. 4/30/2009 at 61. Moore had testified at the hearing that she knew the Petitioner for two to three years before the shooting. *Id.* at 38–39. Detective Theodore Hagan testified at the same hearing and corroborated Moore's testimony. Hagan stated that he did not present Moore with a photographic array because Moore had indicated that "she knew the [perpetrator] from prior contact and also knew the [perpetrator for] two to three years and saw him frequently in the neighborhood going to the basketball courts." *Id.* at 19–22. The Superior Court affirmed Judge Hughes' finding that there was an independent basis for Moore's identification of the Petitioner and that the identification was reliable. *See Commonwealth v. Brown*, 2424 EDA 2009 (Pa. Super. 2011).

[10] *Commonwealth v. Kloiber* supports the proposition that:

> where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

106 A.2d 820, 826–27 (Pa. 1954).

cautionary eyewitness instruction was not appropriate. In *Commonwealth v. Ali*, the Supreme Court identified the instances where a *Kloiber* charge is warranted:

> Under *Kloiber*, a charge that a witness'[s] identification should be viewed with caution is required where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past. Where an eyewitness has had protracted and unobstructed views of the defendant and consistently identified the defendant throughout the investigation and at trial, there is no need for a *Kloiber* instruction. When the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant and weakens ineffectiveness claims based on counsel failure to seek a *Kloiber* instruction.

10 A.3d 282, 303 (Pa. 2010) (internal citations and quotations omitted).

The record in this case indicates that Moore had an opportunity to clearly view the Petitioner at the time of the shooting.[11] Moore testified that she was just down the aisle from the Petitioner and the victim in the small store when she observed them arguing. N.T. 5/05/2009 at 121–22.[12] Moore then witnessed Petitioner—whom she recognized from the neighborhood—point a gun directly at the victim's chest and fire two shots. *Id.* at 112–16, 132. Petitioner corroborated that Moore knew him when he testified at trial that he had previously seen Moore. N.T. 5/07/2009 at 111–12. As discussed *supra*, Moore has been consistent—on the day of the shooting, at the preliminary hearing, at the suppression hearing, and at trial—in her identification of the Petitioner. For these reasons, the *Kloiber* instruction was not warranted.

---

[11] While Petitioner neglects to elaborate whom this jury instruction should have referenced (Moore, Raheem, or both), this analysis applies to both.

[12] At the Motion to Suppress the Identification Hearing, Moore stated that she was about 25–30 feet from the Petitioner when she saw him shoot the victim. N.T. 4/30/2009 at 33. Raheem agreed at trial that the store was small and had only two rows. N.T. 5/05/2009 at 212.

## Failure to Object to Erroneous Rulings

Petitioner also asserts he was denied the effective assistance of counsel when trial counsel failed to object to the trial court's jury instruction that the Petitioner's Disorderly Conduct conviction could be used to judge his credibility. Petitioner properly avers that Disorderly Conduct is not a *crimen falsi* offense and, thus, may not be used under Pa.R.E., Rule 609. Nothing indicates, however, that the jury's knowledge of the Disorderly Conduct conviction prejudiced the jury in such a manner that they were unable to properly render a true verdict.[13] Significant evidence at trial demonstrated the Petitioner's guilt. Two independent eyewitnesses saw the Petitioner in the store and identified him as the shooter. N.T. 5/05/2009 at 112–16, 164–228. Although Raheem recanted his testimony at trial, the jury chose to believe Raheem's statement to police rather than his in-court repudiation. Further, both Raheem and Moore had ample opportunity to observe the Petitioner at the time of the shooting and both witnesses knew the Petitioner from the neighborhood.[14] *Id.* Because Petitioner cannot demonstrate prejudice, this issue is denied.

Petitioner claims he was denied the effective assistance of counsel and the right to confront witnesses when trial counsel failed to object to the trial court's erroneous ruling that he could not ask a witness when, or how long, she was on probation at the time of the crime and that her probationary status was relevant to assess bias and/or credibility. Although it was not submitted to the jury that Moore was on probation *at the time* of the subject shooting, the jury twice heard that Moore was on probation for the sale of drugs. N.T. 5/05/2009 at 126, 146.

___

[13] The Superior Court has already held that the jury hearing about Petitioner's Disorderly Conduct conviction did not prejudice him. In his direct appeal to Superior Court, Petitioner alleged that the trial court was erroneous for allowing his character witness to be cross-examined about his Disorderly Conduct conviction. The Superior Court, however, found that the Disorderly Conduct conviction was permitted at it properly tested the knowledge of Petitioner's character witness regarding his reputation as a peaceful citizen. *Commonwealth v. Knowledge Brown*, 2424 EDA 2009 (Pa. Super. July 8, 2011) (non-precedential decision).

[14] Although he repudiated much of his statement to police at trial, Raheem testified at trial that he had seen Petitioner before at school. N.T. 5/05/2009 at 178–79.

11

During closing arguments, trial counsel also argued that Moore's probation gave her incentive to cooperate with law enforcement:

> you heard testimony that Miss Moore is on probation in the City of Philadelphia for selling drugs. She would have incentive to be very helpful to the police department. She is on probation, and that probation can be revoked at any time, if she violates the law. So, she what [sic] to be very cooperative with the Philadelphia Police Department.

N.T. 5/07/2009 at 164. If the jury were told about the timing of Moore's probation, the premise of trial counsel's above statement—that Moore had incentive to help police—would have been similar if not identical. Petitioner therefore fails to demonstrate how the jury not hearing about the *timing* of Moore's probation prejudiced him. For this reason, no relief is warranted for this claim.

## Character Witnesses

Petitioner asserts that he was denied the effective assistance when trial counsel failed to properly investigate and present non-family character witnesses. The failure to call character witnesses does not constitute *per se* ineffectiveness. *Commonwealth v. Cox*, 983 A.2d 666, 693 (Pa. 2009). To present an issue of arguable merit premised upon counsel's failure to call character witnesses, it must be established that: "(1) the witness existed; (2) the witness was available; (3) counsel knew or should have known of the witness; (4) the witness was willing to testify on appellant's behalf at trial; and (5) the absence of the witness's testimony prejudiced appellant." *Commonwealth v. Connolly*, 689 A.2d 950, 951 (Pa. Super. 1997).

At the evidentiary hearing, Petitioner's mother claimed that trial counsel never articulated to her the need for character witnesses until the first day of trial. N.T. 8/24/2015 at 59–61. On this day, trial counsel notified Petitioner's mother that he needed character witnesses, and that he needed their names that same day. *Id.* at 62. Petitioner's mother informed him that she knew

12

individuals who were willing to send in letters on Petitioner's behalf, in which counsel responded that he needed bodies to testify, not letters. *Id.* at 60–61.

To his Amended Petition, Petitioner attached six affidavits from potential character witnesses. Five of those affidavits assert that they informed Petitioner's mother before trial that they were willing to provide character testimony on Petitioner's behalf but were never contacted by an attorney to testify. Although there is no evidence that trial counsel knew these witnesses existed, this Court finds that he *should have known* as he waited until the first day of trial to locate character witnesses.

Petitioner was not without character testimony, however. Trial counsel did present Petitioner's mother as a character witness. *See Commonwealth v. Handcharik*, 388 Pa. Super 337 (1989) (finding that counsel presenting some but not all of character witnesses on a list provided by defendant was not ineffective).[15] The trial court did properly instruct the jury that character testimony can "raise a reasonable doubt, and require a verdict of not guilty." N.T. 5/07/2009 at 217–18.

'While this Court is disturbed by the trial counsel's last minute attempt to locate character witnesses in a homicide trial, this Court finds no case law that supports the proposition that trial counsel must investigate and present non-family character witnesses. Although familial character witnesses generally lack the credibility of unbiased non-familial witnesses, familial character witnesses are not *per se* worthless. *Commonwealth v. Weiss*, 606 A.2d 439, 443 (Pa. 1992). Further, Petitioner fails to demonstrate how the uncalled character witnesses so prejudiced him as to require a new trial. For these reasons, this claim is denied.

---

[15] Judges Hughes instructed the jury in her charge that "[e]vidence of good character, may, by itself, raise a reasonable doubt, and require a verdict of not guilty. She informed the jury that they may "[w]eigh and consider the evidence of good character, or lack thereof, along with all of the evidence presented in the case." N.T. 5/07/2009 at 217–18.

Petitioner states that he was prejudiced when trial counsel failed to object to the trial court's ruling that character witnesses could be cross-examined regarding their criminal records. At the evidentiary hearing, trial counsel testified that since he started practicing law—some twenty-three years ago—he never calls character witnesses with criminal records to testify. N.T. 8/24/2015 at 45. Although this Court finds no merit in this criterion for character witnesses, Petitioner fails to show how not calling these character witnesses would have overcome the fact that two independent eyewitnesses, who knew Petitioner from the neighborhood, saw him commit the murder. With such evidence establishing Petitioner's guilt, this Court cannot find that but for trial counsel's meritless criterion for character witnesses, a reasonable probability existed that the result of the proceeding would have been different.

This Court examined the cumulative prejudicial effect of the alleged errors of trial counsel. *See Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009) (stating that if multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation). While the record illustrates trial counsel's meager and misguided performance, this Court cannot agree with Petitioner that there was a reasonable probability that had these matters been handled differently, the result of the trial would have been different. While there were many instances of trial counsel's deficient performance not a single one necessitates a new trial. Courts have consistently held that no number of failed claims may collectively warrant relief if they fail to do so individually. *Commonwealth v. Cox*, 983 A.2d 666 (Pa. 2009) (*citing Commonwealth v. Washington*, 927 A.2d 586, 617 (Pa. 2007). This Court is satisfied that no cumulative prejudice relief is warranted.

For the foregoing reasons, these claims are DENIED. Petitioner is hereby notified that he has thirty (30) days from the date of this Opinion and Order to file an appeal with the Superior Court.

BY THE COURT,

Barbara A. McDermott, J.

15

*Commonwealth v. Knowledge Brown*
CP-51-CR-0003358-2008

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Sam Ritterman, Esq.

**Type of Service:**          **Hand Delivery**

Susan Lin, Esq.
Jules Epstein, Esq.
The Cast Iron Building
718 Arch St.
Ste. 501
Philadelphia, PA 19106

**Type of Service:**          **First-Class Mail**

Knowledge Brown
HG4618
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112

**Type of Service:**          **Certified Mail**

**Dated: October 19, 2015**

R. Christopher Campbell, Esq.
Law Clerk to the
Honorable Barbara A. McDermott